## JAMES CECIL LAW, JR. *v.* STATE OF MARYLAND

[No. 87, September Term, 1975.]

*Decided December 30, 1975.*

458

The cause was argued before Orth, C. J., and Powers and Melvin, JJ.

*Luther C. West, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Daniel J. Cassidy, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

This appeal marks the second time this Court is called upon to review the propriety of the convictions of James Cecil Law, Jr. of second degree murder and assault with intent to murder. In *Law v. State*, 21 Md. App. 13 (decided April 19, 1974; certiorari denied by Md. Ct. of Appeals July 25, 1974) we reversed the convictions and remanded the case to the Circuit Court for Charles County for a new trial. On January 29, 1975, after trial before the court, sitting without a jury, the appellant was again convicted of second degree murder and assault with intent to murder. Two questions are presented on this appeal:

1. "Was it error to deny Appellant's Motion for Acquittal at his trial?"
2. "Did the trial judge shift the burden of proof to the Appellant insofar as reducing the crime of second degree murder (and assault with intent to commit murder) to manslaughter or to justifiable homicide?"

I

At a non-jury trial the sufficiency of the evidence is always before us when presented on appeal. Maryland Rule 1086. In determining sufficiency of the evidence we must view the evidence and all reasonably deducible inferences therefrom in the light most favorable to the State. So viewed, if the evidence is such that it would support a finding by the trier of fact, be it a jury or a court sitting without a jury, that the defendant is guilty beyond a reasonable doubt of the charges against him, the motion was properly denied; if the evidence would not support such a finding the motion was improperly denied. *Iozzi v. State*, 5 Md. App. 415 (1968); *Kelly v. State*, 16 Md. App. 533 (1973) aff'd 270 Md. 139 (1973); *Carter v. State*, 15 Md. App. 242 (1972).

The evidence presented at the re-trial was in basic outline the same evidence presented at appellant's first trial. There is no need to repeat it here. See *Law v. State, supra*, pp.

15-25. After carefully reviewing the evidence before the trial court, we cannot say that the appellant was entitled as a matter of law to judgment of acquittal as to either of the charges against him. There were issues raised by the evidence which were properly submitted to the trier of fact. The trial court did not err in denying the motion.

## II

On June 9, 1975, while appellant's appeal to this Court was pending, the U. S. Supreme Court decided *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881. The narrow issue in *Mullaney* was whether the homicide law of Maine "requiring the defendant to prove that he acted in the heat of passion on sudden provocation accords with due process". 421 U. S. 684, at 692. The Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case". 421 U. S. 684, at 704.

In *Evans v. State*, 28 Md. App. 640, this Court, in a scholarly opinion by Judge Moylan, thoroughly analysed the extensive and significant impact of *Mullaney* upon the procedural aspects of the criminal law of this State. In *Evans* we held, *inter alia*, that it is unconstitutional to impose upon a defendant in a criminal case the burden of proving, by any standard, his innocence as to any element of a crime, or to relieve the State of its burden of proving beyond a reasonable doubt any element of the crime charged.

We also held in *Evans* that "a verdict rendered in a court trial of murder in the second degree will bear scrutiny under *Mullaney v. Wilbur* if the judge, in the course of rendering his decision, indicates that he relied upon the now unconstitutional presumption of malice or that he in any way placed upon the defendant the burden of proving such mitigation as would reduce murder to manslaughter (mitigation fairly being an issue in the case)." 28 Md. App. at 663.

We further held in *Shuck v. State*, 29 Md. App. 33, that

"under a fair reading of the broad principle enunciated in *Mullaney v. Wilbur* (See part IIB of *Evans v. State*), a constitutional allocation of the burden of persuasion in an assault with intent to murder case is mandated just as surely as is a constitutional allocation of the burden of persuasion in a felonious homicide case."

In arriving at the guilty verdicts in this case the trial judge in an oral opinion carefully reviewed the evidence and what he considered to be the applicable law. In responding to the evidence of justifiable or excusable homicide based on appellant's right to defend his home, the judge said, ". . . [I]t does not appear to the Court that the Defendant acted with caution in exercising that right, nor as Mr. Hockheimer stated, the killing was unavoidable". The judge then described some of the "options" he felt the appellant should have exercised that would have avoided the homicide. He then stated:

> "Accordingly, the Court finds that an unlawful homicide indeed was committed without justification and having reached this conclusion, the law presumes it to be murder in the second degree and also presumes that malice existed."

As we now know, this is an incorrect statement of the law. It is a good example of the confusion that has grown up in the law of homicide in Maryland because of the "treacherous procedural vocabulary [that] has been superimposed upon an equally treacherous definitional vocabulary". *Evans v. State, supra,* Part IIC The Common Law's Tower of Babel.

In presuming second degree murder from the absence of justification, the State was thereby unconstitutionally relieved of the burden of proving beyond a reasonable doubt an essential element of the crimes of both second degree murder and assault with intent to murder,[1] that element being the absence of mitigating circumstances. Not only was

---

1. To constitute assault with intent to murder, it must be shown that had the victim of the assault died as a result of the assault, the crime would have been *murder*. It would not be enough to show that the resulting homicide would have been manslaughter. Shuck v. State, supra.

the State relieved of that burden, but the burden was placed squarely on the appellant to prove that element, albeit only by a preponderance of the evidence. Immediately after making the above quoted statement in his oral opinion, the trial judge said:

"The burden at this point is then upon the Defendant to show only by a preponderance of the evidence sufficient facts to lower the homicide from murder in the second degree to manslaughter."

These dual errors (first, relieving the State of the burden of proving non-mitigation beyond a reasonable doubt, and second, imposing upon the appellant the burden of proving his innocence as to that element of the crimes) are clearly of constitutional proportions where the evidence has generated a genuine issue with respect to that element. *Mullaney v. Wilbur, supra; Evans v. State, supra; In re Winship*, 397 U. S. 358, 364 (1970).

We now turn to the question of whether an issue of mitigation was generated by the evidence. We may assume that when the trial judge found that "an unlawful homicide indeed was committed without justification . . . " he did so by applying the proper standard of proof, i.e., beyond a reasonable doubt, and that he was negating by that standard the issue of defense of habitation raised by the evidence. Viewing the evidence in the light most favorable to the appellant, that an issue of defense of habitation was fairly in the case is abundantly clear. We think the evidence, viewed in that light, also fairly generated an issue of mitigation.

At the time of the homicide, appellant and his bride of a few weeks were alone in the bedroom in their darkened house. Two weeks before the homicide their house had been burglarized. They heard noises outside. Appellant got out of bed, nude, and went downstairs to investigate the matter. He continued to hear noises like someone was "trying to get in". He obtained from the living room his shotgun, purchased for "home protection" after his house had been burglarized two weeks before. He heard a noise on his back porch, "a fiddling around with the door". There were

curtains on the back door and he could see no figures on the darkened back porch. He felt that there were burglars on his porch, and "then I heard the scraping of a window pane." He next heard a voice say, "Lets go in". At that time he was in the living room, "standing there with my shotgun shaking . . ." because he was scared. In appellant's words, "at that time the gun went out [sic]". He said he didn't know how the gun went off; he could have pulled the trigger intentionally or accidentally; he didn't know. When the gun went off, it was held about waist high pointed toward the back door. The single shotgun blast went through the door killing police officer Garrison, who at that time was attempting to gain entrance to the house. The blast narrowly missed police officer Adams who was standing beside officer Garrison. The two officers had gone to the house in response to a call from appellant's next door neighbor who, unknown to appellant or his wife, had earlier called the police to report a suspected burglary attempt at appellant's house. The State conceded in closing argument that appellant did not knowingly shoot a police officer and that "he probably thought he shot a burglar or whatever that was outside".

As we said in *Shuck v. State, supra*, at 40, "Although by far the most common form of mitigation is that of a hot-blooded response to legally adequate provocation, this is not the only form of mitigation that will negate malice and will reduce what might otherwise be murder to man-slaughter". In *Shuck* we quoted from Perkins, *Criminal Law* (2d Ed., 1969, at pp. 69-70) where the author describes this legal phenomenon of "Mitigation other than Provocation":

"Since manslaughter is a 'catch-all' concept, covering all homicides which are neither murder nor innocent, it logically includes some killings involving other types of mitigation, and such is the rule of the common law. For example, if one man kills another intentionally, under circumstances beyond the scope of innocent homicide, the facts may come so close to justification or excuse that the killing will be classed as voluntary manslaughter

rather than murder. 'It is not always necessary to show that the killing was done in the heat of passion, to reduce the crime to manslaughter; ' said the Arkansas court, 'for, *where the killing was done because the slayer believes that he is in great danger, but the facts do not warrant such a belief, it may be murder or manslaughter according to the circumstances, even though there be no passion.*' " (Emphasis Supplied).

In *Shuck* we also recognized "imperfect" self-defense as a form of mitigation other than hot-blooded response to legally adequate provocation, quoting with approval from Lafave and Scott, *Criminal Law* (1972, pp. 583-589) where the authors said:

"In order for a killer to have a 'perfect' defense or self-defense to homicide, (1) he must be free from fault in bringing on the difficulty with his adversary; and (2) he must reasonably believe (though he need not correctly believe) both (a) that his adversary will, unless forcibly prevented, immediately inflict upon him a fatal or serious bodily injury, and (b) that he must use deadly force upon the adversary to prevent him from inflicting such an injury. If one who is not the aggressor kills his adversary with these two actual and reasonable beliefs in his mind, his homicide is justified, and he is guilty of no crime — not murder, not manslaughter, but no crime.

What if a defendant who did not initiate the difficulty honestly but unreasonably believes either that he is in danger of the injury or that killing is the only way to prevent it; or, even though he reasonably believes these things, he was at fault in bringing about the difficulty? He cannot have the defense of self-defense, for that requires both freedom from fault in the inception of the difficulty and the entertainment of beliefs which are reasonable. But is murder the only alternative? Or

should the matter fall into the category of manslaughter, consisting of those homicides which lie in between murder and no crime. Some cases so hold, whether the reason for the 'imperfection' of the defense is the defendant's own fault in bringing on the difficulty or the unreasonableness of the honest but erroneous beliefs which he entertains."

Since the issue of mitigation was generated by the evidence, the State was required to convince the trier of fact beyond a reasonable doubt of non-mitigation. It is clear to us that the judge, as the trier of fact, did not consider that he need be so convinced, but instead considered that the burden was upon the appellant to convince him by a preponderance of the evidence that there *were* mitigating circumstances which would "lower the homicide from murder in the second degree to manslaughter". This error requires a reversal under *Mullaney v. Wilbur, supra,* as analyzed in *Evans v. State, supra.*

The trial judge also misplaced the burden of proof with respect to the issues of accidental death and "implied malice". Immediately following the judge's statement allocating to the appellant the burden of lowering the homicide from murder to manslaughter, quoted *supra,* he discussed the "allegation" that appellant's gun was fired accidentally. It is clear that the judge did find that he could not "accept the Defendant's allegation the gun went off accidentally". It appears, however, that he made such a finding, not because he found that the State had proved beyond a reasonable doubt that appellant intentionally fired the gun, but because the appellant failed to prove by a preponderance of the evidence that the killing was unintentional. It is clear also that the trial judge found "at least implied malice" from the act of firing the gun "the natural tendency of which was to cause death or great bodily harm", even though, as the judge said, there may have been "no actual intent to injure". Here again, however, it appears that the trial judge found "implied malice", not because he was convinced of it beyond a reasonable doubt, but because the appellant had failed to convince him by a preponderance

of the evidence that it did not exist. Immediately after finding "implied malice", the judge said:

> "Thus, the Court is not persuaded by a preponderance of the evidence that the killing here is manslaughter and accordingly finds the Defendant guilty on Count One of murder in the second degree".

That the burden is upon the State to prove beyond a reasonable doubt every element of malice necessary to constitute the crime of second degree murder (including, where the issue is fairly generated, an intentional act which produced the homicide — even where the *homicidal* agency is not an issue) is now firmly established. *Evans v. State, supra. See* also *Wilson v. State,* 28 Md. App. 168, in which we held, even before *Evans v. State,* that the burden was upon the prosecution to overcome, and not upon the defense to prove, an issue of accidental killing fairly generated by the evidence.

*Judgments reversed.*
*Case remanded for new trial.*