# MELVIN FAULKNER *v.* STATE OF MARYLAND

[No. 1006, September Term, 1982.]

*Decided March 9, 1983.*

The cause was argued before LOWE and GARRITY, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Gary S. Offutt, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Claudia A. Cortese, Assigned Public Defender,* on the brief, for appellant.

*Valerie V. Cloutier, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Brian Murphy, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. LOWE, J., dissents and files a dissenting opinion at page 122 *infra.*

I

From the turbulent waters of the criminal law of Maryland, roiled by the dictates of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881 (1975), emerged an esoteric qualification to the doctrine of self-defense, known as the "imperfect right of self-defense." We noticed it in *Evans v. State,* 28 Md. App. 640, 658, n. 4, 349 A.2d 300 (1975), *aff'd, State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976), recognized it in *Shuck v. State,* 29 Md. App. 33, 40-45, 349 A.2d 378

(1975), *cert. denied,* 278 Md. 733 (1976), mentioned it in *Wentworth v. State,* 29 Md. App. 110, 120-121, 349 A.2d 421 (1975), *cert. denied,* 278 Md. 735 (1976), and applied it in *Law v. State,* 29 Md. App. 457, 463-465, 349 A.2d 295 (1975), *cert. denied,* 278 Md. 726 (1976). The Court of Appeals of Maryland has not yet addressed the matter.

In the frame of reference of legal history, the doctrine of imperfect self-defense is of recent origin, and scholars of the law have referred to it as "not yet far advanced." LaFave and Scott, *Criminal Law* (1972), § 77. We speculated in *Evans,* at 658, n. 4, that it is "little more than an academic possibility." But, as we discovered in *Shuck* and *Wentworth,* the impact of *Mullaney* has made the qualification viable and rendered it more than academic. There are indications that defense counsel are now invoking it, and the bench and prosecutors had best take heed.

Homicide in "perfect" self-defense is either justifiable or excusable and when established the killer is not culpable.[1] *Whitehead v. State,* 9 Md. App. 7, 10, 262 A.2d 316 (1970). Perfect self-defense requires not only that the killer subjectively believed that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so. If established, the killer remains culpable and his actions are excused only to the extent that mitigation is invoked.[2]

---

**1.** "Justifiable self-defense is where a person is feloniously assaulted, being without fault himself, and necessarily kills his assailant to save himself from death or great bodily harm, or from other felony attempted by force or surprise. Excusable self-defense is where a person becomes engaged in a sudden affray or combat, and in the course of the affray or combat, necessarily, or under reasonably apparent necessity, kills his adversary to save himself from death or great bodily harm after retreating as far as he can with safety. The force used must not be unreasonable or excessive." Whitehead v. State, 9 Md. App. 7, 10, 262 A.2d 316 (1970). We observed that although the distinction between justifiable and excusable self-defense is real, it has no practical effect in application because in either event the killer is not culpable. *Id.*

**2.** The usual form of mitigation is hot-blooded response to the provocation of mutual combat. Shuck v. State, 29 Md. App. 33, 38-40, 349 A.2d 378

The mitigating effect of imperfect self-defense is to negate malice. It therefore serves not only to reduce murder to manslaughter in the case of a felonious homicide but applies also to the felony of assault with intent to murder. It fatally erodes an assault with intent to murder charge. Since there is no crime of assault with intent to manslaughter, when malice is negated with respect to assault with intent to murder, the accused, if so charged, may be found guilty of simple assault and battery.[3] *See Thomas v. State,* 29 Md. App. 45, 51-52, 349 A.2d 384 (1975), *cert. granted,* 278 Md. 736 (1976), *cert. dismissed,* 279 Md. 604 (1977).

It is now firmly established that the trial court's instructions in a murder case must be in full accord with the dictates of *Mullaney v. Wilbur.* We said in *Shuck,* 29 Md. App. at 36, that *Mullaney v. Wilbur,* applies to an instruction on assault with intent to murder just as surely as it applies to an instruction dealing with the murder charge itself.

We explained:

> "Since a necessary element of assault with intent to murder is the malicious state of mind such as would constitute murder if the assault victim had died, an instruction on the elements of murder, *on the relevant defenses to murder,* and on the burdens with respect thereto was called for." (emphasis added). *Id.*

*See Finnegan v. State,* 33 Md. App. 251, 254, 364 A.2d 124, *cert. denied,* 279 Md. 682 (1976), *cert. denied,* 433 U.S. 912 (1977); *Jacobs v. State, supra,* at 512; *Law v. State, supra,*

---

(1975), *cert. denied,* 278 Md. 733 (1976). But this is not the only form of mitigation, and one of the other forms is imperfect self-defense. Perkins, *Criminal Law* (1972) pp. 69-70.

3. Perfect self-defense negates — by justification or excuse — simple assault and battery just as it negates felonious homicide and assault with intent to murder. Jacobs v. State, 32 Md. App. 509, 512, 363 A.2d 257 (1976). Imperfect self-defense, as we have seen, applies to both murder and assault with intent to murder, but it has no application to manslaughter and simple assault and battery. These are offenses that do not require a malicious intent. Thus, they are not such crimes as permit mitigated guilt as distinguished from aggravated guilt. None of the forms of mitigation may serve to render one committing such an offense non-culpable.

at 462-465; *Blake v. State,* 29 Md. App. 124, 126, 349 A.2d 429 (1975), *cert. denied,* 278 Md. 716 (1976). It follows that, when the evidence generates the issue of mitigation with respect to an assault with intent to murder charge, the trial court may, and upon request, shall, give an appropriate instruction to the jury. Md. Rule 757b; *Lansdowne v. State,* 287 Md. 232, 239, 412 A.2d 88 (1980).

## II

Melvin Faulkner went on trial before a jury in the Criminal Court of Baltimore charged with assault with intent to murder Ricky Emanuel and related offenses.[4] The charges stemmed from a brouhaha on a public street during which Faulkner shot Emanuel in the chest. As in *Shuck,* 29 Md. App. at 35, the factual versions of what occurred in the confused and angry medley varied significantly in terms of who was the aggressor at various stages of the fight, who entered into the fight mutually and wilfully and who was simply defending in an effort to extricate himself from a difficult situation. Faulkner admitted that he fired the shot that struck Emanuel, but from his testimony and other evidence it was fairly a jury question whether he acted without legal justification or excuse or in self-defense or under mitigating circumstances. The trial judge included in his charge both the doctrine of perfect self-defense and the rule of mutual combat. Faulkner was content with this as far as it went, but he wanted more. He requested an instruction on imperfect self-defense. The trial judge, without stating his reasons, but apparently believing that he had adequately covered all the applicable law, refused to add the requested instruction to his charge.

We find as a matter of law that the evidence generated, in addition to the issues as to perfect self-defense and mutual combat, the issue of mitigation in the form of imperfect

4. Faulkner was convicted of assault with intent to murder, using a handgun in a crime of violence and carrying a handgun. He was sentenced to a term of imprisonment of 10 years on the assault with intent to murder conviction and to concurrent terms of five years and one year on the handgun convictions, respectively.

self-defense.[5] Faulkner, under the law of Maryland as it now stands, was entitled to an instruction on imperfect self-defense. The matter was not fairly covered in the instructions actually given. Therefore, the judge committed reversible error in refusing to give the requested instruction. The judgment of conviction and sentence with respect to the charge of assault with intent to murder is reversed. The case is remanded for a new trial on that charge.[6]

### III.

The refusal of the judge to charge the jury with regard to imperfect self-defense also contaminates the judgment on the use of a handgun in the commission of a felony or a crime of violence. To render a verdict of guilty of that offense, the trier of fact must determine, as to the corpus delicti, that a felony or a crime of violence was committed and that a handgun was used in its commission. The deficiency in the instruction here was pertinent to the first element. As we have seen, if imperfect self-defense is duly established, it fatally erodes an assault with intent to murder charge, mitigating it to simple assault and battery, neither a felony nor a crime of violence. Therefore, if Faulkner could prove to the satisfaction of the jury that he assaulted Emanuel in imperfect self-defense, he could not be guilty of the use of a handgun in the commission of a felony or crime of violence. It follows that Faulkner was entitled to the requested instruction not only with respect to the assault with intent to murder charge, but also with respect to the use of a handgun charge. The judgment as to the use of a handgun in the commission of a crime of violence is reversed. The case is remanded for a new trial on that charge.[7]

---

5. It is difficult to envision circumstances which are sufficient to generate the issue of justification or excuse by way of perfect self-defense which do not also generate the issue of mitigation by way of imperfect self-defense. Generally, if a defendant is entitled to an instruction with respect to the former, he will be entitled to an instruction with respect to the latter.

6. In light of our reversal of the judgment on the offense of assault with intent to murder, we do not reach Faulkner's contention that the trial court erred in refusing to give a requested instruction as to transferred intent relating to that offense.

7. The exception to the failure to give an instruction on imperfect

## IV.

With respect to the judgment entered on the conviction of carrying a handgun, proof of the corpus delicti and Faulkner's criminal agency as to that offense was not dependent upon the establishment of his guilt of assault with intent to murder. It was clear from the evidence that Faulkner had on his person a .22 caliber revolver, and he admitted that he fired the bullet which struck Emanuel. The judgment entered upon the conviction of carrying a handgun may stand despite our reversal of the judgments as to assault with intent to murder and the use of a handgun.

Faulkner presents two contentions which relate to the handgun charges. He filed a pretrial motion to suppress the admission in evidence of the handgun seized from his person the day after the shooting. After a plenary hearing the court below denied the motion. Faulkner alleges error.

The court gave its reasons for the ruling:

> "All right, the resolution of this issue, of course, is as to whether the stop and the seizure of the weapon in this case is proper. The Court is bound by the standards set forth in Terry vs. Ohio. I think counsel will agree on that. Under Terry a police officer must be able to point to specific and articulable facts which taken together were rational inferences from the facts reasonably to warrant the intrusion.
>
> Now the facts of this case are what? One, there was a shooting that had taken place the day before; that the shooting involved a black male of a particular height, build, and what the Court

---

self-defense was a general one: "I take exception to the fact that our requested instruction on imperfect self-defense was not given." Although a written request for instructions was submitted to the court and ordered to be filled, it is not included in the record before us.

We note that Ford v. State, 274 Md. 546, 337 A.2d 81 (1975), is not relevant. *Ford* permits a guilty verdict as to the use of a handgun to stand absent a *conviction* of a felony or a crime of violence, but there must be a determination by the trier of fact in any event that the accused committed such an offense to support a verdict that he was guilty of using a handgun in its commission.

considers very significant, wearing a black leather jacket.

This incident happened in the middle of September and what the officer testified to is that it was a rather warm day; it was not a cool day where normally a person wears a jacket. At least that's the inference I would draw from his testimony. The officer had this information, saw this defendant, and he testified that he particularly stood out because of this black jacket, this description. He knew the area where the defendant was, was a high crime area. He also would be justified in believing that if the person was involved in a shooting the day before, there was a strong probability that he might be armed; that in attempting to question this particular person those factors became important to him, and it would seem to me, based on all the facts he had before him, that he was justified in making a limited search, at least of his outer clothing, at least for his own protection. And that's all he did in this case, according to his testimony.

And what he did, he felt this metal object and, which is, in his expertise and experience, led him to believe that it was a revolver or pistol, a weapon of some sort, and in which, indeed, after he took this weapon or whatever object from his waistband, it turned out to be a .22 caliber revolver, which was loaded.

Under all the circumstances in this case, the Court feels that his actions were permissible under Terry vs. Ohio, and I will therefore deny your motion."

We agree. The court's compendium of the facts is in accord with the evidence. Upon our independent constitutional appraisal of the entire record, we believe that, in the circumstances, the officer, suspecting criminal activity, had authority to make the limited intrusion on Faulkner's personal security based on less than probable cause. The

"frisk" for weapons was a justifiable response to the officer's reasonable belief that he was dealing with a possibly armed and dangerous suspect. We think the denial of the motion to suppress was in accord with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968), as explicated by *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921 (1972), *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574 (1975) and *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587 (1981) and as applied in *Watkins v. State,* 288 Md. 597, 420 A.2d 270 (1980). We hold that the denial of the motion to suppress was not erroneous.

Faulkner also made a pre-trial motion *in limine* to suppress any evidence regarding the seizure of the .22 caliber handgun and the admission of the weapon on the ground that "[t]his clearly constitutes evidence of another crime, wholly independent of the crime for which he was charged." He contends that the trial judge erred in denying the motion. We see no error. There was evidence that Faulkner shot the victim with a .22 caliber handgun and that a .22 caliber bullet was removed from the victim's chest.[8] The weapon and its presence on Faulkner's person a day after the shooting was "substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680 (1976), quoting C. McCormick, *Evidence,* § 190 (2d ed. 1972). We hold that the denial of the motion *in limine* was not erroneous.

> *Judgment on assault with intent to murder (first count of C.I. 28134336) reversed and case remanded for a new trial thereon.*

> *Judgment on using a handgun in the commission of a crime of violence (third count of C.I. 28134336) reversed and case remanded for a new trial thereon.*

---

8. The condition of the bullet was such that it could not be determined by a ballistics examination if it was fired from the weapon seized.

*Judgment on wearing, carrying and transporting a handgun (first count of C.I. 28134337) affirmed.*

*Costs to be paid two-thirds by the Mayor and City Council of Baltimore and one-third by appellant.*

*Lowe, J. dissenting:*

I cannot dispute that we have heretofore saddled society with yet another "academic possibility" providing one more pressure valve for an accused. As pointed out in *Shuck v. State,* 29 Md. App. 33, 40 (1975), quoting n. 4 of *Evans v. State,* 28 Md. App. 640, 658 (1975), the imperfect self-defense concept is predicated upon "esoteric extenuating circumstances, 'not yet far advanced;'" however, the footnote of *Evans* was "advanced" by the dicta of *Shuck* which in turn was again "advanced" by application in *Law v. State,* 29 Md. App. 457 (1975), where we said that it is a mitigation defense, not an exculpation. In that singular application of the newly discovered academic esoteria we noted that its effect was to "negate malice" and that it would "reduce what might otherwise be murder to manslaughter." I cannot agree to extend its application beyond its specified purpose; but more importantly, I am now convinced that we should back off from the limited course we set in *Shuck, supra,* and *Law, supra.*

For this Court now to "perfect" the not very far advanced academic possibility predicated upon esoteric extenuating circumstances from an imperfect mitigation of malice in murder to an absolute exculpation of assault with intent to murder, engrafts upon that statutory crime an implication of knowledge in the Legislature decades ago, which we ourselves have only now admixed in our thinking and have not yet "set" long enough to jell. To this extent the Legislature may alleviate the resultant damage we have imposed upon that crime by semantically correcting assault with intent to *murder* to assault with intent to *kill.* This

would negate the desultory effect of an imperfect self-defense upon that statutory crime which obviously was never intended or even contemplated.

But I further question the general philosophy of permitting even a mitigating defense predicated upon the subjective "belief" of a killer despite the admitted unreasonableness of such a belief. There is left no standard by which the violent conduct can be measured except that standard peculiar to the killer himself. I must confess that I sat silently in *Shuck* where the academic possibility became something more than academic. But I cannot perpetuate my sin of silence when the practical significance of an academically reasonable concept addressed conceptually but not applied practically, upon ultimate application exposes the stark impracticality of such application. The criminal law as an instrument of societal control cannot allow violence to be excused solely upon the whims of the perpetrator. His conduct must be measured against some societal norm of reasonableness.

Embarrassing as it is to confess my former beguilement I would stifle any further advance of this esoteric concept and return it to the scholars who conceived it. I am encouraged that the Court of Appeals has refused to permit as part of the guilt determining calculus a legally sane defendant even to introduce evidence of his perplexed state of mind as a diminution of responsibility for his violent conduct. *Johnson v. State,* 292 Md. 405 (1982). See also *Simmons v. State,* 292 Md. 478 (1982), the appeal of which was predicated upon the same *Mullaney v. Wilbur,* 421 U.S. 684 (1975), reasoning, relied upon in the case before us.

I respectfully dissent.