619 A.2d 992

**STATE of Maryland**

v.

**John Kenneth MARTIN.**

**No. 9, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 17, 1993.

Motion for Reconsideration Denied
March 24, 1993.

352

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Annabelle L. Lisic, Asst. Atty. Gen., both on brief), Baltimore, for petitioner.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and BELL, JJ.

ROBERT M. BELL, Judge.

John Kenneth Martin, the respondent, was convicted by a jury in the Circuit Court for Wicomico County of first degree murder and carrying a weapon with intent to injure. He was sentenced to consecutive terms of life and three years imprisonment.

During the trial, the respondent produced evidence tending to prove that he had an alcohol problem, often resulting in memory lapses, and that, on that night, he was so intoxicated that he did not remember any of the events, either immediately prior to or after the homicide. The respondent also presented expert testimony that it was possible that he had a memory loss and that he might well have experienced a condition called "explosive rage syndrome." The trial court refused the respondent's request that the jury be instructed on imperfect self-defense, finding that the issue was not generated.

On appeal, a divided panel of the Court of Special Appeals, in an unreported opinion, affirmed the weapon conviction, but reversed the first degree murder conviction. The majority held that, notwithstanding his lack of memory, the evidence of the circumstances of the homicide, coupled with

the expert's testimony, were sufficient to permit the jury to infer that the respondent acted in imperfect self-defense. We granted the State's petition for certiorari to consider under what circumstances imperfect self-defense may be generated by evidence other than the defendant's testimony.[1]

## I.

Considered in the light most favorable to the respondent, *see Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831, 833 (1990); *West v. State,* 312 Md. 197, 207, 539 A.2d 231, 236 (1988); *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056, 1057 (1986); *Dixon v. State,* 302 Md. 447, 450, 488 A.2d 962, 963 (1985); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830, 842 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)), the evidence bearing on the issue was as follows. The respondent and Wayne Gordy, the victim, were among a "bunch of guys" sitting around talking "behind Cooper's Market, beside the school" in Willards. The respondent and Gordy were arguing. After five to ten minutes, Gordy ordered the respondent to, "go on and get out of there and don't come back unless I tell you you can" and that "this time would be different, it would be me kicking your ass all across this parking lot." Gordy followed the respondent briefly as he walked towards his truck.

Sometime later, when the victim and a friend, who had driven around for a while, returned to that general location, the respondent was seated in his car near the school. Gordy told his friend that he was going to walk over and see what the respondent was doing there. Gordy left the

---

1. The State's petition asked us to determine whether the issue of imperfect self-defense is generated where a defendant has no recollection of the incident and, hence, does not testify concerning his motivation and subjective belief, and produces no evidence concerning whether he feared for his life, believed the victim was armed, or was able to retreat.

car carrying a beer cup in one hand and "a party ball" [2] in the other.  His friend had also gotten out of the car and was coming around the front of a parked truck when he heard a gunshot.  He turned and saw the victim falling and the respondent's car taking off.

The respondent's car was discovered about three quarters of a mile from the scene of the shooting.  The keys were still in the ignition and a shotgun shell was on the floor of the driver's side.  A spent shell, and one other, were found on the ground outside the car.  The respondent's property was searched.  A shotgun was recovered from a wooded area in the back of the residence and a box of shotgun shells was found on a dresser in the respondent's bedroom. The respondent was found asleep in the front seat of a junked car on the outskirts of the property.

Defense testimony established that the respondent had been drinking beer, more or less continuously, the entire day.  It also established the respondent's drinking habits. According to his brother, the respondent sometimes drank to a point where he could not remember where he had been or what he had done.  He also testified that, when the respondent was arrested, "[the officers] were more or less . . . holding him up because he couldn't hardly walk on his own."

The respondent, testifying in his own behalf, stated that, until the officers found him asleep in his backyard, the last thing he remembered was standing behind Cooper's Market and hearing a siren go off.  In addition, addressing his drinking, he said he had experienced memory loss quite often in the year prior to his arrest, most recently some two weeks before.  He admitted consuming a significant amount of beer and smoking marijuana on the night in question.

---

**2.**  According to the testimony, a "party ball" is a ball-shaped object made of plastic, designed to hold three gallons of beer.

A licensed pharmacist and professor of drug abuse education testified for the respondent as an expert in the area of pharmacology and toxicology. He asserted, based on testing, that the respondent was an alcoholic, that a person of the respondent's size who consumed 20 to 24 beers in a 12 hour period, would be "severely intoxicated," without "any ability for cautionary reactions" and liable to experience an "alcohol blackout," *i.e.*, an alcohol-induced form of amnesia. The witness also testified that, had the respondent consumed sufficient alcohol to produce a blood alcohol level of 0.2, as the testimony suggested he did, an "explosive rage syndrome", characterized by very aggressive, assaultive, and out of control conduct could have resulted.

The trial court denied the respondent's request that the jury be instructed on "imperfect self-defense." It determined that no legally sufficient basis to generate the issue had been shown.

## II.

### A.

Maryland Rule 4–325, in pertinent part, provides:

(c) *How Given.* The court may, and at the request of any party shall, instruct the jury as to the applicable law and extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

We have interpreted this rule to require a trial judge to "give a requested instruction that correctly states the applicable law and that has not been fairly covered in instructions actually given." *Mack v. State*, 300 Md. 583, 592, 479 A.2d 1344, 1348 (1984). *See also Dean v. State*, 325 Md. 230, 240, 600 A.2d 409, 413 (1992); *Hunt v. State*, 321 Md. 387, 442, 583 A.2d 218, 245 (1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *Bruce v. State*, 318 Md. 706, 733, 569 A.2d 1254, 1268 (1990); *Johnson v. State*, 310 Md. 681, 686, 531 A.2d 675, 677 (1987). Of

course, to merit an instruction, the issue as to which the request is made must have been generated by the evidence adduced. *See* Md. Rule 4–432(b); *Rubin v. State,* 325 Md. 552, 585, 602 A.2d 677, 693 (1992); *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1, 13, *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1985); *Smith v. State,* 302 Md. 175, 179, 486 A.2d 196, 198 (1985). See also Md. Rule 2–520(b), the civil counterpart to criminal rule 4–325(b), and *Odenton Dev. Co. v. Lamy,* 320 Md. 33, 43, 575 A.2d 1235, 1239 (1990); *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979); *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258, 265 (1974). *Accord Singleton v. Roman,* 195 Md. 241, 72 A.2d 705 (1950) (refusal to give an instruction that is *applicable* to the issues, when it is not covered by other instructions, is a ground for reversal).

## B.

■ It is well-settled that self-defense requires that the accused:

(1) had reasonable grounds to believe him or herself in apparent imminent or immediate danger of death or serious bodily harm from an assailant;

(2) in fact believed him or herself to be in such danger;

(3) was not the aggressor or provoked the conflict;

(4) used no more force than the exigency required.

*State v. Faulkner,* 301 Md. 482, 485–86, 483 A.2d 759, 764 (1984). *See also Dykes v. State,* 319 Md. 206, 211, 571 A.2d 1251, 1254 (1990); *Tichnell v. State,* 287 Md. 695, 718, 415 A.2d 830, 842 (1980). In *Faulkner,* we recognized, for the first time, "an esoteric qualification to the doctrine of self-defense, known as the 'imperfect right of self-defense.'" *Faulkner v. State,* 54 Md.App. 113, 114, 458 A.2d 81, 82 (1983), *aff'd,* 301 Md. 482, 483 A.2d 759 (1984). We noted, however, that, unlike self-defense, " '[i]mperfect self-defense, ... requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so.'" 301

Md. at 500, 483 A.2d at 769, quoting *Faulkner*, 54 Md.App. at 115, 458 A.2d at 82. We recognized also that imperfect self-defense differs from self-defense in that it is not a complete defense; it mitigates murder to voluntary manslaughter rather than completely exonerating the defendant. 301 Md. at 486, 483 A.2d at 761. We explained:

Logically, a defendant who commits a homicide while honestly, though unreasonably, believing that he is threatened with death or serious bodily harm, does not act with malice. Absent malice he cannot be convicted of murder. Nevertheless, because the killing was committed without justification or excuse, the defendant is not entitled to full exoneration. Therefore, as we see it, when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily harm, the defendant is entitled to a proper instruction on imperfect self defense.

301 Md. at 500, 483 A.2d at 769 (footnote omitted).

### C.

In *State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976), explicating *Mulaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), we recognized the unconstitutionality of placing the burden, to prove self-defense, by any standard, on a defendant. 278 Md. at 206, 362 A.2d at 634–35. We pointed out, however, that the defendant could be required initially to produce " 'some evidence' on the issue of mitigation or self-defense (or [rely] upon evidence produced by the State) sufficient to give rise to a jury issue with respect to those defenses." *Id.* at 208, 362 A.2d at 635.

That the same analysis applies to imperfect self-defense was made clear in *Dykes*, 319 Md. at 216, 571 A.2d at 1256. We had earlier held that imperfect self-defense was, like self-defense, a mitigating defense and, thus, implicitly, that it fell within the teachings of *Evans*. *Faulkner*, 301 Md. at 486, 483 A.2d at 767.

As to the meaning of "some evidence," *Dykes* is also instructive:

> *Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says— "some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self-defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the defendant did not kill in self-defense.

319 Md. at 216–17, 571 A.2d at 1257. Ordinarily, where self-defense has been generated by the evidence, imperfect self-defense is generated as well. As we said in *Faulkner:*

> It is hard to imagine a situation where a defendant would be able to produce sufficient evidence to generate a jury issue as to perfect self defense but not as to imperfect self defense. It seems clear to us that if the reasonableness of a defendant's belief is at issue, as it is in self-defense, a *fortiori*, the existence of that belief is also at issue. Therefore, the jury must reject the reasonableness of the defendant's belief as well as the existence of that belief to find the defendant guilty of murder.

301 Md. at 502–03, 483 A.2d at 770. *See also Cunningham v. State*, 58 Md.App. 249, 254, 473 A.2d 40, 43, *cert. denied*, 300 Md. 316, 477 A.2d 1195 (1984) (imperfect self-defense stands in the shadow of perfect self-defense).

### III.

■ The State argues that imperfect self-defense is not generated when the defendant remembers nothing about

the incident resulting in the death of the victim and produces no evidence of his subjective belief at that time, *i.e.*, that he feared for his life because he believed the victim was armed and he was unable to retreat safely. Moreover, the State contends that, in addition to some evidence that he honestly, but unreasonably, believed himself in apparent or immediate danger of death or serious bodily harm from the victim, the defendant must also produce some evidence that he was not the aggressor, used no more force than was necessary under the circumstances, and had no means of retreating from the danger. Only when some evidence of each has been produced, the State asserts, is an instruction on imperfect self-defense warranted.[3]

The respondent, like the Court of Special Appeals, takes a different view. He believes, as the intermediate appellate court held, that, because there was "some evidence" that the respondent had a subjective, though unreasonable belief that the use of deadly force was necessary, an instruction

---

**3.** The State cites *Dykes v. State,* 319 Md. 206, 571 A.2d 1251 (1990), for this proposition. In that case, the issue was whether self-defense and imperfect self-defense had been generated. Having set forth the specific factors for self-defense, we commented:

> If the jury so found, it could have concluded, guided by proper instruction and looking to the totality of the circumstances, that the doctrine of perfect self-defense applied. If the jury found the first five of those factors but determined that Dykes had a subjectively honest but objectively unreasonable belief that he was in imminent danger of death or serious bodily injury, it could have concluded that the doctrine of imperfect self-defense applied.

319 Md. at 223, 571 A.2d at 1260. *See Lambert v. State,* 70 Md.App. 83, 97, 519 A.2d 1340, *cert. denied,* 309 Md. 605, 525 A.2d 1075 (1987) and *Cunningham v. State,* 58 Md.App. 249, 256, 473 A.2d 40, 43 *cert. denied,* 300 Md. 316, 477 A.2d 1195 (1984), on which the State also relies.

Curiously, the respondent relies on *Dykes* for the opposite proposition, "that the defendant is entitled to an instruction on imperfect self-defense as long as there is 'any' evidence in the case from which the jury could conclude that the defendant had the subjective belief that the use of deadly force was necessary." Brief of the respondent, p. 9 (footnote omitted).

Since we have concluded that insufficient evidence was presented to permit the drawing of an inference as to the respondent's subjective belief, we need not and, therefore, do not reach this issue.

on imperfect self-defense was absolutely required. In this case, the "some evidence," as summarized by the intermediate appellate court, was:

> [T]hat the victim had ordered Martin to leave the area, had threatened to "kick [Martin's] ass all across th[e] parking lot," and had followed Martin when he went to get into his truck to leave. Subsequently, the victim had approached Martin's car, as Martin was apparently sitting there, not doing anything. The victim was carrying a "party ball" in his hand, which, given the darkness and Martin's intoxicated state, could have been mistaken by Martin for a weapon of some sort, perhaps a heavy object intended to be thrown or used as a bludgeon. Furthermore, Martin's expert testified that a person who consumed as much alcohol as Martin would have his "cognitive functions ... very dramatically affected" and would "lose touch with reality." Therefore, there was sufficient evidence from which the jury could infer that Martin honestly, albeit unreasonably, feared that his life was in imminent danger.

Slip op. at 12–13. The court specifically rejected the notion that anything more than the existence of an honestly held, though unreasonable, belief had to be produced. Slip op. at 12.

Ordinarily, the source of the evidence of the defendant's state of mind will be testimony by the defendant. *See Sims v. State*, 319 Md. 540, 554–55, 573 A.2d 1317, 1324 (1990); *McKay v. State*, 90 Md.App. 204, 216, 600 A.2d 904, 910 (1992); *Lambert v. State*, 70 Md.App. 83, 98, 519 A.2d 1340, 1347 (1987), citing *Tripp v. State*, 36 Md.App. 459, 469, 374 A.2d 384, 391 (1977) and *Bartram v. State*, 33 Md.App. 115, 175, 364 A.2d 1119, 1153 (1976).[4] That need not be the case,

---

**4.** The Court of Special Appeals, in a footnote, referred to *Law v. State*, 29 Md.App. 457, 462–63, 349 A.2d 295, 299, *cert. denied*, 278 Md. 726, (1975) and *Wentworth v. State*, 29 Md.App. 110, 116, 349 A.2d 421, 428, *cert. denied*, 278 Md. 735 (1975) (involving duress) as illustrative of the fact, that when imperfect self-defense has been found to exist, evidence of the accused's state of mind has been presented. *Lambert,*

however. *See Sims,* 319 Md. at 554–55, 573 A.2d at 1234; *Lambert,* 70 Md.App. at 98 n. 2, 519 A.2d at 1347 n. 2, citing *Shuck v. State,* 29 Md.App. 33, 43–44, 349 A.2d 378, 383–84 (1975).[5] In *Sims,* we addressed, in addition to imperfect self-defense, whether hot blooded response to adequate provocation had been generated. 319 Md. at 551–553, 573 A.2d at 1322–23. In concluding that there was not a shred of evidence showing the defendant's state of mind at the critical moment, *i.e.,* when the shooting occurred, we pointed out:

> Sims' testimony sheds no light on this because he testified that he was not there. No one else saw his facial expressions or heard his speech at the time critical to this determination. Assuming that there might be a case where the evidence of that type could demonstrate the sudden onset of hot-blooded passion that produced the mortal blow or shot, this is not such a case. The blood must indeed be hot, and under some circumstances only the hot-blooded killer can attest to that.

*Id.* at 553, 573 A.2d at 1323. That observation is equally relevant to the case *sub judice.*

█ As we have seen, the respondent testifying in his own defense, recounted what he did prior to the shooting. Although he did not deny that he fired the fatal shot, as in *Sims,* nor testify that, at the critical time, his mind was a blank, as in *Lambert,* 70 Md.App. at 97, 519 A.2d at 1347, the respondent specifically denied having any recollection of the incident. And neither he, nor the State, offered any evidence whatever specifically addressing his state of mind *when* the fatal shot was fired. When the issue is whether self-defense or imperfect self-defense has been generated, determining whether there is evidence in the record pertain-

---

70 Md.App. at 98 n. 2, 519 A.2d at 1347 n. 2. That evidence in both cases was testimony by the defendant.

5. Not only did the defendant testify in *Shuck v. State,* 29 Md.App. 33, 349 A.2d 378 (1975), but the testimony was quite detailed as to the circumstances of the incident resulting in the victim's death.

ing to the defendant's mental state at the time of the incident is critical. Only if the record reflects, from whatever source, that, at that time, the defendant subjectively believed that he or she was in imminent danger of death or great bodily harm could the issue be generated.

■ "The question of one's state of mind, or his intention, at a particular time is one of fact, and is subjective in nature. Therefore it must be determined by a consideration of his acts, conduct and words." *Taylor v. State*, 238 Md. 424, 433, 209 A.2d 595, 600 (1965), citing *Midgett v. State*, 216 Md. 26, 41–42, 139 A.2d 209, 217 (1958), and *Bird v. State*, 231 Md. 432, 436, 190 A.2d 804, 806 (1963). Ordinarily, one's state of mind is proven circumstantially. *See State v. Jenkins*, 307 Md. 501, 513–15, 515 A.2d 465, 471–72 (1986) and cases therein cited; *Young v. State*, 303 Md. 298, 306, 493 A.2d 352, 356 (1985); *Davis v. State*, 237 Md. 97, 104, 205 A.2d 254, 258–59 (1964), *cert. denied*, 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965). Though both are states of mind and clearly related, intent and a subjective belief of imminent peril are not identical. Circumstantial evidence of the former does not necessarily prove the latter. What one intends to do and what one believes, even as the precipitating predicate for one's intent, are entirely separate and distinct states of mind. A defendant may intend to kill the victim, but only because he or she honestly believes that he or she is in imminent danger of death or serious bodily injury, which can only be avoided by the use of force.

Analyzing the evidence adduced in this case makes the point clearly. The evidence of state of mind relied upon by the respondent and the Court of Special Appeals consists of testimony concerning two encounters between the respondent and Gordy and expert testimony as to the possible level and effect of the respondent's intoxication. Testimony with respect to the initial encounter was rather detailed and it focused on the respondent's acts, conduct and words. It recounted a somewhat extended argument between Gordy and the respondent, describing what Gordy said to the respondent and the respondent's reaction. From these cir-

cumstances, and particularly the fact that the respondent left the scene after being told, under threat of physical violence, to do so by Gordy, who also followed him for a short distance, an inference arguably may be drawn as to the respondent's mental state at that time; it may be inferred that the respondent was then fearful of Gordy. On the other hand, neither direct nor circumstantial evidence of the respondent's state of mind at the time of the second encounter was presented. Because no one witnessed the encounter itself, the testimony related to what happened immediately prior to the occurrence—Gordy saw the respondent in his parked car and determined to confront him—and immediately afterward—a shot was heard, Gordy was seen falling, and the respondent was seen leaving the scene. The testimony did not describe the manner in which Gordy approached the respondent's car or the manner in which he carried the party ball and beer cup. No evidence was presented as to whether, and if so, how, the respondent reacted to Gordy's approach or what the parties said to each other prior, most particularly, just prior, to the shooting. While the evidence of the second encounter may have been sufficient for the drawing of an inference that the respondent shot Gordy with the intention of killing him, *see Jenkins*, 307 Md. at 514, 515 A.2d at 471, because it provided no details of, or insight into, the circumstances of the shooting from the respondent's perspective, his acts, his words, his conduct, there was nothing from which to draw an inference as to what the respondent subjectively believed or felt when he fired the fatal shot.

By joining the two encounters, the respondent seeks to use evidence of his state of mind during the first encounter with Gordy as "some evidence" of his state of mind during the second encounter. Because, he reasons, it may be inferred that, during the initial encounter, he was fearful of Gordy, coupling that inference with the further fact, testified to in connection with the second encounter, that Gordy was carrying two objects when he started out to approach his car, when the expert's testimony is considered, permit

an additional inference to be drawn—that he believed himself to be in imminent fear of death or serious bodily injury when he shot Gordy.

■■■ Evidence that a defendant may have been afraid of a victim at an earlier time, assuming that is the relevant subjective belief,[6] does not mean that, at the moment of the fatal encounter, that state of mind persisted, especially when, as here, the defendant returned to the site of the encounter after apparently arming himself. Since it is the defendant's subjective belief at the moment that the fatal shot is fired that is relevant and probative, evidence of a prior mental state will not suffice. To justify submitting the issue to the jury, evidence sufficient to support the inference that the relevant state of mind was still in existence at the later time must still be presented. No such evidence exists in this record. And, as we have seen, the evidence that was offered fell far short of generating an issue of imperfect self-defense; from it no inference whatever of the respondent's subjective belief of imminent peril could be drawn.

■■■ The evidence of the expert, because it addresses the level and effect of the respondent's intoxication, does relate directly to the respondent's state of mind. It may be relevant to, and probative of, the respondent's ability to form the requisite malevolent intent. *See Shell v. State,* 307 Md. 46, 65–68, 512 A.2d 358, 368–69 (1986); *State v. Gover,* 267 Md. 602, 606–07, 298 A.2d 378, 381 (1973); *Stansbury v. State,* 218 Md. 255, 261, 146 A.2d 17, 21 (1958). But that is not the issue *sub judice.* It may also be relevant to, and probative of, the existence of a subjective,

---

**6.** It is doubtful that fear alone suffices to generate the requisite state of mind for imperfect self-defense. The fear must be of imminent death or serious bodily injury. *But see* Laurie E. Taylor, Note, *Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self-Defense* 1679, 1712 (1986) (Fear may be overwhelming enough to produce a heat of passion).

honest belief in the need to defend oneself. *Simmons v. State*, 313 Md. 33, 48, 542 A.2d 1258, 1265 (1988).

In *Simmons*, expert psychiatric testimony that an honest belief of imminent peril was consistent with the defendant's psychological profile was held admissible. We said that such testimony "has some relevance in that consistency between the specific subjective belief testified to by Simmons and Simmons's psychological profile tends to make it more likely that Simmons in fact held that subjective belief." *Id.* There was a proviso, however:

> While experts are permitted to testify as to the ultimate issue of fact in Maryland, we are not prepared to suggest that Dr. McDaniel should have been permitted to testify that the defendant was *in fact* acting under an honest belief that self-defense was necessary at the time of the homicide. There were no witnesses to the start of the violent altercation and psychiatric testimony to the effect that Simmons was *in fact* acting under a belief that he was in mortal danger would impermissibly suggest that the victim was the aggressor. Moreover ... a psychiatrist cannot precisely reconstruct the emotions of a person at a specific time.

*Id.* at 47–48, 542 A.2d at 1265 (citation omitted).

In this case, the respondent did not testify as to what his subjective belief was when he shot Gordy and there were no witnesses to the "start of the [encounter]," or any part of it, save the result. Consequently, unlike *Simmons*, there simply was no testimony by the respondent against which the expert testimony admitted by the court could be tested for consistency. Nor was there on this record any other evidence tending to prove the respondent's state of mind when he shot Gordy. And, because, as we recognized in *Simmons*, a psychiatrist cannot precisely reconstruct the emotions of a person at a specific time, the expert testimony, the only evidence at all probative of the defendant's state of mind at the relevant time, having been admitted, an imperfect self-defense instruction would have presented a real danger that the jury would consider that testimony to be

proof positive that the defendant did act under the belief that he was in imminent danger of death or serious bodily injury and it would be permitted to so use it.

"Some evidence" sufficient to generate an issue of self-defense means to the respondent any evidence of circumstances permitting an inference to be drawn as to a defendant's state of mind at sometime prior to, not at, the relevant moment, and expert testimony as to what his or her state of mind might have been at that time. He would have us hold, in other words, that generation of the issue does not require production of, or reliance on, evidence tending *affirmatively* to prove what the defendant felt or believed at the relevant time. In short, he would sanction speculation as a substitute for evidence; under his formulation, unless there was evidence tending affirmatively to negate the requisite subjective belief, the issue of self-defense would be generated. We do not share this view.

None of the cases upon which the respondent relies, *see People v. Lockett,* 82 Ill.2d 546, 45 Ill.Dec. 900, 413 N.E.2d 378 (1980); *State v. Adams,* 31 Wash.App. 393, 641 P.2d 1207 (1982), supports his analysis. In each of these cases, the defendant presented direct evidence, *i.e.* his own testimony, of his subjective belief at the critical moment. Nor is he assisted by *People v. Simpson,* 129 Ill.App.3d 822, 84 Ill.Dec. 949, 473 N.E.2d 350 (1984). In that case, the court upheld the trial court's refusal to give an imperfect self-defense instruction. The defendant relied on the testimony by two police officers of the defendant's inculpatory statements made during custodial interrogation as evidence of his subjective belief of imminent peril. 84 Ill.Dec. at 961, 473 N.E.2d at 362. One officer said that the defendant recounted that the victim, after asking whether the defendant was threatening him and being told to "take it any way you want," "opened up the [van's] door and started to reach in," at which point the defendant pulled his gun and shot him in the back because "I didn't want to give him a chance." *Id.* The other officer said that the defendant denied that the victim threatened him and stated that he did

not see that the victim had a weapon. *Id.* The court said the "mere factual reference of Officer Higgins to [the victim's] movement away from the defendant in order to reach into his van," *id.*, was not, under the circumstances, sufficient to permit the jury reasonably to conclude "that the defendant subjectively believed at the time that Drake was about to commit an aggressive act or that the defendant subjectively believed the use of force was necessary for his own self defense." *Id.* at 962, 473 N.E.2d at 363.

We hold that where the defendant's subjective belief at a particular time must be shown to generate a defense, only evidence bearing directly on that issue will suffice. Evidence of the defendant's subjective belief at some earlier time will not do.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

ELDRIDGE, Judge, dissenting:

For the reasons set forth in the opinion of the Court of Special Appeals, I would affirm the judgment of the Court of Special Appeals.