STEVEN ALLEN BLAKE a/k/a Charles Allen
*v.* STATE OF MARYLAND

[No. 270, September Term, 1975.]

*Decided November 28, 1975.*

The cause was argued before MOYLAN, GILBERT and MELVIN, JJ.

*R. Roland Brockmeyer, Assigned Public Defender*, for appellant.

*Arrie W. Davis, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *William B. Yates, II, State's Attorney for Dorchester County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Steven Allen Blake, also known as Charles Allen, was convicted in the Circuit Court for Dorchester County, by a jury, presided over by Judge C. Burnam Mace, of three separate counts of assault with intent to murder and of unlawfully carrying a handgun. The main thrust of this appeal is that the trial judge allegedly committed error 1) in failing to instruct the jury that the appellant had the right to resist unlawful arrest; 2) in failing to instruct the jury that if an unlawful arrest so inflamed the appellant as to cause him to kill the arresting officer, the resulting crime would only be manslaughter; and 3) in giving an erroneous instruction on the presumption of malice in violation of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975).

It is really only the *Mullaney v. Wilbur* problem which concerns us. The short answer to the alleged failure of the judge to instruct on the right to resist unlawful arrest and on the mitigating effect of a hot-blooded, albeit excessive, response to the provocation of an unlawful arrest is that the appellant failed to request any such instructions. The point is not, therefore, preserved for appellate review. Md. Rule 1085; Md. Rule 756 g. Since the putative error was simply one of omission rather than commission, it is not even arguably the type of "plain error" that we may recognize in the exercise of our discretion under Md. Rule 756 g. *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62.

It is, of course, clear that *Mullaney v. Wilbur* will apply to a conviction of assault with intent to murder just as surely as it will apply to a conviction for some form of unlawful homicide itself. *Thomas v. State,* 29 Md. App. 45, 349 A. 2d 384. Since it is necessary in determining the special *mens rea* in an assault with intent to murder case to hypothesize a resultant death and to determine the degree of blameworthiness of the hypothetical killer, proper instructions as to the various mental states that may apply in a homicide case are required.[1]

---

1. It is sometimes stated that the assault must be "committed under circumstances such that, if death ensued, the crime would have been murder in either the first or second degree." *Davis v. State,* 204 Md. 44, 50, 102 A. 2d 816. That statement, true enough for most cases, is, however, too broad. There are at least four types of intent which are adequate to make a resultant death murder. One is the actual intent to kill, sometimes referred to as "express malice." The other three are sometimes collectively called the various forms of "implied malice." We catalogued these in *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300, Part IIE3c:

> "Originally, the intent required for murder was the 'intent to kill' — the state of mind which we today call 'express malice.' The 17th century (and very late 16th century) recognized the need to punish as murder homicides resulting from other life-endangering intents, even though such intents did not involve literally the intent to kill. These additional mental states were added to the *mens rea* of murder during this period and they are what we today call:
>
> 1) intent-to-do-serious-bodily-injury murder;
> 2) felony-murder; and
> 3) depraved-heart murder. (Perkins gives this mental state the less emotionally charged and probably better label of

The jury instruction, in pertinent part, ran as follows:

"An assault is any attempt unlawfully to apply the least actual force to the person of another. In these cases, assault with intent to murder goes a little further than common assault. This is what I understand the law of Maryland to be relative to the charge with intent to murder. Intent is the essence of the felony of assault with intent to murder. If the intent was carried out, the resulting crime would have had to be either first or second degree rather than manslaughter. A specific intent to murder is not a necessary element for a conviction of assault with intent to murder. It is sufficient if there was an intention to commit grievous bodily harm. The essential distinction between murder and manslaughter is the presence or absence of malice."

Thus far, the instruction was a perfectly proper one. It then turned to the troublesome subject of "malice":

"Malice is the intentional doing of a wrongful act to another without legal excuse or justification."

---

'Wanton and Wilful Disregard of Unreasonable Human Risk')."

Since assault with intent to murder requires a specific intent of achieving a particular result, it is clear that it is more restricted in its mental elements than would be the resultant murder itself. It would apply where there was an actual intent to kill or where there was an actual intent to do grievous bodily harm. *Davis v. State, supra.* In both cases, there is an intended evil result above and beyond the general intent to do the dangerous act itself. It would appear equally clear that an assault with intent to murder conviction could not be predicated upon the other two varieties of "implied malice" — felony-murder or the "wanton and wilful disregard of unreasonable human risk." There is, in either of these situations, no specific intent above and beyond the general intent. If this were not so, every rape, assault with intent to rape, robbery, assault with intent to rob, kidnapping, assault in the course of an escape, etc. would constitute automatically an assault with intent to murder. In this regard, we find highly persuasive Perkins, *Criminal Law* (2nd Ed. 1969), at 763:

"Murder may be committed without an actual intent to take life. 'But to constitute the offense of an assault with intent to murder there must be a specific intent to kill.' Hence it is error to instruct the jury that the same facts and circumstances which would make the offense murder, if death had ensued, will furnish sufficient evidence of intention to convict of assault with intent to murder."

As we discussed in Part IIG2c of *Evans v. State*, this sentence is not technically complete, because it neglects to include that aspect of malice which is "the absence of mitigation." That aspect is adequately handled, however, later in the instruction. The instruction then goes on:

> "The inference of malice may be drawn from the fact of the use of a deadly weapon directed to a vital part of the body."

The inference of malice — more literally, the inference of the intent to kill or the intent to do grievous bodily harm — from the use of deadly force is a perfectly proper inference, as we analyzed in *Evans v. State* in Part IIF. The pertinent part of the instruction, for present purposes, then concludes:

> "The law presumes that in the absence of mitigation, all homicides are committed with malice and constitute murder. This presumption also applies to cases of assault with intent to commit murder."

Although this instruction is less than artistically perfect, see Part IIG2d of *Evans v. State*, no harm is done in the present case. The only arguable defense theory is that of mitigation. The instruction here does not presume "the absence of mitigation" since, by its very terms, the presumption of malice does not operate except where the absence of mitigation is already there as a given fact.

Although the instruction dealing with malice was not a model of clarity, it did not offend *Mullaney v. Wilbur*. The State was not relieved of its rightful burden of proving any element of the crime remotely relevant under the circumstances of this case. No instruction was given which affirmatively placed any type of a burden of persuasion upon the appellant.

Even if the instruction did not pass constitutional muster under *Mullaney v. Wilbur*, however, the error would be harmless in the context of this case. The evidence simply did not generate any genuine jury question as to mitigation. The

appellant's entire argument is predicated upon the proposition that even excessive force in response to an illegal arrest may be a hot-blooded response to legally adequate provocation. That excessive resistance to unlawful arrest is but one variety of response to provocation was made very clear in *Davis v. State, supra,* at 204 Md. 54:

> "The second major line of cases recognizes the wisdom and necessity of the social policy but refuses to permit a reduction of the grade of the homicide to come about automatically. These cases apply a subjective standard and hold that the accused must in fact have been filled with passion aroused by the illegal arrest sufficient to meet the usual provocation tests, if murder is to be reduced to manslaughter. The courts following this line usually classify illegal arrest with sudden combat, assault and battery upon one's person, and the sight of one's wife in the act of adultery, as the standard situations in which a homicide arising out of the agitation stirred up in ordinary men by them will be manslaughter, rather than murder . . .

> . . .

> "In our view, the rule just discussed best serves the sound and necessary balance between the right to freedom of the citizen and the duty of those who must enforce the law, and is the rule to be followed."

In this case, there was no evidence of an illegal arrest. When Cambridge police officers initially stopped the appellant at shortly after midnight on December 26, 1972, under what was at the very least a constitutional "stop" within the contemplation of *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889, see *Gibbs v. State,* 18 Md. App. 230, 306 A. 2d 587, he refused to acknowledge his alias, if not his proper name, and became loud, profane and disruptive in the presence of an angry crowd that was gathering. He was placed under arrest for disorderly conduct, but successfully

fled the arrest scene. When he was stopped by three Cambridge officers several hours later, he opened fire upon them with a pistol.

The issue of provocation fails for yet a second reason. The State's evidence did not indicate that the appellant was acting in hot-blooded response to provocation. The appellant himself took the stand and denied his criminal agency generally. Under the circumstances, no issue of either provocation or of hot-blooded response thereto — to wit, no issue of mitigation — was in the case. Under the circumstances, even an erroneous instruction under *Mullaney v. Wilbur* would have been harmless. See Part IF and Part IIH of *Evans v. State*.

Appellant does not brief his contentions that the testimony of the arresting officers should have been struck out and that the evidence was legally insufficient to support the convictions for assault with intent to murder. We, therefore, do not consider them. Md. Rule 1031c 5. *Jacober v. High Hill Realty, Inc.*, 22 Md. App. 115, 321 A. 2d 838.

*Judgments affirmed.*