PATRICK J. FINNEGAN *v.* STATE OF MARYLAND

[No. 58, September Term, 1976.]

*Decided October 7, 1976.*

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*Alan W. Bernstein, Assigned Public Defender*, with whom were *Goldstein & Bernstein* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County*, and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County*, on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Patrick J. Finnegan, the appellant, was convicted by Judge Matthew S. Evans, presiding in the Circuit Court for Anne Arundel County without a jury, of armed robbery and assault with intent to murder. He was sentenced to consecutive terms of 5 and 15 years. On this appeal Finnegan contends that the trial court erroneously shifted to

the appellant the burden of proof of reducing the crime of assault with intent to murder to a justifiable act or to simple assault. No contention is raised as to the robbery conviction.

The evidence produced by the State established that on the night of July 9, 1974, the appellant and two companions went to the Club Maywood in Edgewater. At the club they met Martin McCarthy and after closing time went to McCarthy's home. The appellant and McCarthy began playing cards and the two other men fell asleep. They were awakened by a loud noise from the kitchen where they observed the appellant strike McCarthy in the head with a hammer. McCarthy fell to the floor, whereupon the appellant proceeded to strike the victim several more times on the skull. The appellant then ordered one of his companions to take the money out of the victim's pockets. This order was complied with and the three men left the house.

The appellant testified that the victim had made sexual advances towards him causing a struggle to ensue. During the course of the struggle the victim grabbed the hammer, which the appellant took from him. He then struck the victim with it in self-defense. The appellant denied any knowledge of the robbery.

When rendering the verdict, the trial judge stated in relation to the issues presented in the appeal:

> "As to the seventh count, [assault with intent to murder] the testimony of the State, of course, is to the effect that these two boys awakened and saw the victim on the floor and this defendant standing over him hitting him with the hammer, and the man on the floor, the victim, asking for mercy, in other words, please stop, and so forth, and then several more blows were struck. We have the testimony of the defendant that this was really in self-defense, that this man had made this pass or attack upon him and attempting to force him into this sexual act, which he refused to do, and as a result, the man became enraged and attacked him.

Now, assuming this to be true, in self-defense, you're in imminent danger of attack and there's no way to escape, you have the right to use reasonable force to overcome this attack. And assuming from the defendant's standpoint that this was an attack by the victim and he was acting in self-defense, the law states that you have to use reasonable force, you can't use force greater than necessary to protect yourself. First, if you have the opportunity to escape, you must escape and not shed blood. If the attack is imminent you have the right to use force, only the force that is necessary. Now, I think the real question here is how much force was necessary to repel the victim? It's true, he was a much older man, he was twenty or twenty-five pounds lighter, he'd been drinking, even if his passion was aroused it's a question of how much force was necessary to repel this man. Even by the defendant's own testimony he had hit this man a maximum of maybe five times. We have the testimony of the other two witnesses that when they awakened the man was on the floor, and certainly, if he was on the floor he had an opportunity to escape, but more blows were struck even though he denies that the other two saw these two blows. And the — really, the force that was used was extremely excessive, under any circumstances. This hammer went through this man's skull, he had trouble pulling the hammer out from the one blow, and it's just fortunate that the man's alive today. Now, as to murder, it's true that by the pointing of a weapon or a deadly weapon at a vital part of the body it infers malice, I mean, you don't have to say 'I'm mad at you', like that, that is not the legal sense of malice, but as many cases have held that where you use a weapon and point it at a vital part of the body that that infers malice, and in this case, we have a hammer which in the manner it was used was a very deadly weapon, and

it struck the man's head, and I don't think it's too important whether he hit him on the side of the head or what part of the head was hit, whether it was inches this way or inches that way. His head, according to the hospital reports was — well, in terrible shape, to say the least, from these blows, and they were very obvious, there were dents in his skull, there were holes in his skull, and there is little question that — in the eyes of the Court that malice was inferred. Of course, malice is a necessary element of murder, murder in the second degree. Murder in the first degree, you'd have to have premeditation, and so forth, but I don't think under the facts of this case that would be true, but I think it is — at least, if the man had died as a result, he has not died, but if he had died as a result of the blows it would be murder in the second degree."

Initially we reiterate the mandates of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), and *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300 (1975), *aff'd*, 278 Md. 197, 362 A. 2d 629 (1976), that it is unconstitutional to relieve the State from the burden of proving beyond a reasonable doubt any element of the crime charged including the absence of justification, excuse or mitigation. It is also unconstitutional to impose upon the accused the burden of proving any defense, provided the evidence raises such an issue. This applies to a conviction of assault with intent to murder just as surely as it applies to a conviction for some form of unlawful homicide itself. *Blake v. State*, 29 Md. App. 124, 126, 349 A. 2d 429 (1975). A verdict rendered in a court trial will bear the same scrutiny as a trial by jury if the judge, in the course of rendering his decision, indicates that he relied upon this now unconstitutional burden of proof. *Law v. State*, 29 Md. App. 457, 349 A. 2d 295 (1975).

In his rendition of the verdict the trial judge repeated several times that the pointing of a deadly weapon at a vital part of the body supports an inference of malice.

As pointed out in *Evans, supra* at 704, this is an overly broad employment of that inference. The directing of a deadly weapon at a vital part of the body infers an intent to kill. Malice, however, includes not only an intent to kill but the absence of both excuse or justification and mitigating circumstances. This inartistic choice of words does not necessarily indicate that the trial judge relied on an unconstitutional presumption of malice. These words must be viewed in context with the total rendition of the verdict. *State v. Grady*, 276 Md. 178, 345 A. 2d 436 (1975).

As in the case of *Mullaney v. Wilbur, supra*, the appellant testified that he was homosexually attacked by the victim. His testimony raised the defense of self-defense, thus generating the issues of both justification or excuse and mitigating circumstances. In rendering his decision the trial judge specifically stated that the victim was a "much older man, he was twenty or twenty five pounds lighter, he'd been drinking ... [a]nd the — really, the force that was used was extremely excessive, under any circumstances." He went on to add that if the victim "had died as a result of the blows it would be murder in the second degree." From this it is clear to us that the trial judge, without relying on any unconstitutional presumption, made a finding, supported by the evidence, that there was an absence of justification, excuse, or mitigating circumstances.

In order for the appellant to have been justified in his actions he must have had reasonable grounds to believe and, have in fact believed, himself to be in apparent imminent or immediate danger of death or serious bodily harm from the victim, but the force used must not have been unreasonable or excessive. *Chandler v. State*, 7 Md. App. 646, 256 A. 2d 695 (1969). There can be no question that the trial judge considered the beating of a much smaller and older man who was intoxicated excessive even when he assumed the appellant's testimony as to the sexual attack to be true. This was a finding of lack of justification. Of course, lack of justification or excuse alone would have been insufficient to make a finding of malice. There must also have been a finding that there was an absence of mitigating

circumstances. The last several times that the victim was struck he was down on the floor. When the trial judge found that the force used upon this older and smaller man was extremely excessive under any circumstances it is apparent that he did not believe that the appellant honestly felt threatened by the victim when the final blows were struck. Where one blow may have been adequate to repel this lesser victim, repeated blows to the head with a hammer went way beyond what was necessary for defense. The trial judge was under no obligation to believe the appellant's testimony as to the number of blows struck. *Rice v. State*, 9 Md. App. 552, 267 A. 2d 261 (1970). When he stated that if the man "had died of the blows it would be murder in the second degree," he found an absence of mitigating circumstances in the final blows. This is, of course, important because it is a valid test for assault with intent to murder in most cases. It is valid in the type of case that we have at bar where the assault is predicated on an actual intent to kill or do grievous bodily harm as opposed to a felony-murder or depraved-heart murder.[1]

---

1. "It is sometimes stated that the assault must be 'committed under circumstances such that, if death ensued, the crime would have been murder in either the first or second degree.' Davis v. State, 204 Md. 44, 50, 102 A. 2d 816. That statement, true enough for most cases, is, however, too broad. There are at least four types of intent which are adequate to make a resultant death murder. One is the actual intent to kill, sometimes referred to as 'express malice.' The other three are sometimes collectively called the various forms of 'implied malice.' We catalogued these in Evans v. State, 28 Md. App. 640, 349 A. 2d 300, Part IIE3c:

> 'Originally, the intent required for murder was the "intent to kill" — the state of mind which we today call "express malice." The 17th century (and very late 16th century) recognized the need to punish as murder homicides resulting from other life-endangering intents, even though such intents did not involve literally the intent to kill. These additional mental states were added to the *mens rea* of murder during this period and they are what we today call:
>
> 1) intent-to-do-serious-bodily-injury murder;
> 2) felony-murder; and
> 3) depraved-heart murder. (Perkins gives this mental state the less emotionally charged and probably better label of "Wanton and Wilful Disregard of Unreasonable Human Risk").'

Since assault with intent to murder requires a specific intent of achieving a particular result, it is clear that it is more restricted in its mental elements than would be the resultant murder itself. It would apply where

"... As a matter of juridical science, any circumstance of substantial mitigation should be sufficient to reduce to manslaughter a killing that would otherwise be murder. Suppose, for example, the defendant thought he was in imminent danger of death and must kill to save himself from being murdered, and that he did kill for that reason. Suppose, also, there was no actual danger to his life at the moment, and the facts fell a little short of reasonable grounds for a belief in such danger. *His homicide is not excused*; but if the circumstances came rather close to such as would constitute an excuse his guilt is of manslaughter rather than murder, . . .". (Emphasis added) Perkins, *Criminal Law* (1st Ed. 1957), at 40. In the instant case the circumstances were not close. In any event this type of question is usually one for the fact finder. *Nixon v. State*, 204 Md. 475, 479, 105 A. 2d 243 (1954).

Appellant also asserts that both the defense counsel and the State's Attorney relied on unconstitutional allocations of the burden of proof. He claims that this is another factor which indicates that the trial court was deciding the case under an unconstitutional standard. The record does not reveal that the trial judge relied on the arguments of counsel in determining this case.

*Judgments affirmed.*

---

there was an actual intent to kill or where there was an actual intent to do grievous bodily harm. Davis v. State, *supra*. In both cases, there is an intended evil result above and beyond the general intent to do the dangerous act itself. It would appear equally clear that an assault with intent to murder conviction could not be predicated upon the other two varieties of 'implied malice' — felony-murder or the 'wanton and wilful disregard of unreasonable human risk.' There is, in either of these situations, no specific intent above and beyond the general intent. If this were not so, every rape, assault with intent to rape, robbery, assault with intent to rob, kidnapping, assault in the course of an escape, etc. would constitute automatically an assault with intent to murder. In this regard, we find highly persuasive Perkins, Criminal Law (2nd Ed. 1969), at 763:

'Murder may be committed without an actual intent to take life. "But to constitute the offense of an assault with intent to murder there must be a specific intent to kill." Hence it is error to instruct the jury that the same facts and circumstances which would make the offense murder, if death had ensued, will furnish sufficient evidence of intention to convict of assault with intent to murder.' "

Blake v. State, *supra* at 126 n.1.