544 A.2d 14

**Erik  O'Brien  SELBY**

v.

**STATE  of  Maryland.**

**No.  1707,  Sept.  Term,  1987.**

Court  of  Special  Appeals  of  Maryland.

July  15,  1988.

Certiorari  Granted  Oct.  26,  1988.

202

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Robert L. Dean, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before GARRITY, ROBERT M. BELL and POLLITT, JJ.

ROBERT M. BELL, Judge.

Erik O'Brien Selby, appellant, was found guilty at bench trial in the Circuit Court for Montgomery County of attempted first degree murder, robbery with a dangerous and deadly weapon, and wearing and carrying a deadly weapon openly with intent to injure. Having been sentenced to consecutive terms of imprisonment totaling life plus twenty-one years, he has appealed, presenting two questions for our resolution:

1. Did the trial court err when it convicted Appellant of attempted first degree murder?
2. Is Appellant's conviction and sentence for carrying a deadly weapon improper?

The facts underlying this appeal are clear. They are gleaned from the statement appellant gave the police and from his testimony at trial. Having left his house at about 5:00 o'clock in the morning of the day of the incident and having taken loose change and marijuana from a gym bag that he found in a convertible automobile, appellant went to a 7 Eleven store where he purchased a newspaper, a pack of cigarettes and some rolling papers. He then proceeded to an office building on Fenton Street and, for a time, stood in front of the building reading the paper and smoking ciga-

rettes. When the door to the building was left unlocked by an occupant who had left to mail a letter, he entered. It was then about 6:30 a.m. Once inside the building, he went to an upper floor stairwell and read the paper, smoked marijuana, and waited, thinking all the time of "[t]rying to get some money from the first person I seen, really". At some point while waiting, he unscrewed light bulbs in the corridor and then returned to the steps where he continued to wait. After having heard someone in the corridor, appellant went into the bathroom; he stayed there for about 15 minutes. As he was about to leave, he first heard, and then saw, a female downstairs. She was carrying a "few bags". When she reached the floor on which appellant was waiting, because it was "nearly dark" in the hallway, she turned on a light in the restroom and then started to unlock the door to the office where she worked. Appellant described what happened next: "Then at the instance—I don't know how you say it, but at the spur of the moment, it just seemed like I charged up to her from behind, and I stuck her with the knife." He took her purse and, after removing about $40.00 from it, threw it into a trash can. Appellant then returned home. He stated that "I didn't really intend to really hurt nobody. I just most likely was thinking of a snatch rob", which he clarified as "pocketbook snatching".

The victim was severely injured in the attack. The wound, at least six inches deep, sliced through several major back muscles, lacerated blood vessels within the abdominal cavity, and amputated the lower portion of her left kidney. It was made by a large butcher knife. According to the testimony at trial, the victim almost died on several occasions during surgery.

### 1.

The focus of appellant's trial was on his conduct prior to the commission of the crimes and his intent at the time of their commission, rather than upon his criminal agency. Appellant contended that, since attempted murder requires a specific intent to kill, in the absence of a motive to kill, where the circumstances reveal that the apparent purpose

is to rob, the trier of fact could not find beyond a reasonable doubt that appellant had a specific intent to kill. He argued that, in the absence of an intent to kill, "appellant could not be convicted of attempted murder, much less attempted premeditated murder".

The State, on the other hand proffered alternative theories upon which a finding of attempted first degree murder could be made. First, it proffered that the evidence was sufficient to support a finding beyond a reasonable doubt that appellant possessed a premeditated intent to kill when he stabbed the victim. Alternatively, the State argued that, whether or not appellant had a premeditated intent to kill, he could be found guilty of attempted first degree murder so long as the trier of fact found beyond a reasonable doubt that appellant was lying in wait for some purpose and had at least the intent to inflict grievous bodily harm upon the victim when he stabbed her. This latter argument was premised upon Maryland Code Ann., art. 27 § 407, which provides:

All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of willful, deliberate, and premeditated killing shall be murder in the first degree.

The court rejected the State's first theory. It reasoned: With regard to premeditation. It is clear that this aforethought, as they say, doesn't have to be of any specific duration, where somebody is found to have deliberated to commit a murder.

But it is also clear, under the law of our State and most states, where the analysis has been as refined as it is in Maryland, that a fairly specific intent to kill is required for premeditated murder; murder in the first degree. Among the kinds of things that Courts look at to see whether there is premeditation, is to consider what the Defendant did prior to the actual killing to show that the Defendant was engaged in an activity directed toward an explainable—as intended to result in a killing. What might be called planning activity.

Secondly, among other things that the Court looks at, are a Defendant's prior relationship or conduct with a victim from which the Court could infer motive, or inference of motive, which is not strictly speaking, required, but does help to get one to appreciate premeditation.

Then one takes facts about the nature of the killing from which one can infer that the manner was so particular and exacting, that the Defendant must have intentionally killed, according to some preconceived design, which one could determine again, by way of the planning or the prior relationship with the parties.

This is obviously a case where the Defendant had no prior relationship with the Defendant [sic], and it is hard to know whether there was a motive. This appears to be a relatively senseless crime. Certainly not, if one were to ascribe any reasonableness to snatch robbers, not the kind of act that would be in any way necessary to accomplish a purse snatching.

So that it goes beyond that. There is no question in this case that the Defendant took pains to plan this crime; to get to a particular office building, on a high floor, early in the morning to unscrew light bulbs, and await a victim of some sort.

That, of course, those facts by themselves are consistent with merely going to rob or mug, as opposed to kill. The fact that he took a knife of substantial dimension, a butcher knife with him, is the—is a perplexing part of this case. Having a knife of that size is in no way really consistent with an intent to commit a snatch rob.

I am no more willing to give the Defendant the benefit of believing his testimony that he was really bent on snatch robbing, than that he was bent on killing somebody, or doing them grievous bodily harm.

The fact is, he had a knife for some purpose. The question is: What purpose can reasonably be inferred? But for the knife, it is hard to get to the specific intent to kill. It is true that the knife, a dangerous weapon, a terrible weapon, was plunged into a part of the victim's

body which might well have caused death; came close to causing death, according to the testimony of the physician this morning.

The question is whether those facts alone would lead the Court to find the necessary premeditation. The problem with the facts in the end is that the knife was there, but the Court still has some doubt as to whether the knife was there as a potentially threatening instrument that could cause grievous bodily harm, as opposed to an instrument that was being carried directly for the purpose of killing somebody.

Accordingly, the Court does conclude with regard to the first theory, that is the specific premeditated murder, that the State has not carried its' burden of proof beyond a reasonable doubt, and would not be inclined to find on that theory that there was murder in the first degree [sic].

The court accepted the State's alternative theory, that attempted first degree murder may be found if, even though there is no proof of a specific intent to kill, the court finds that the attempt was made by a person lying in wait with some specific intent to do grievous bodily harm. The court ruled:

\*　　\*　　\*　　\*　　\*　　\*

Lying in wait specifically requires three components: Concealment and watching and waiting.

Let us assume, and the Court so finds, in fact, that there was concealment of the defendant in this case, that he was watching, and that he was waiting, and the Court so finds beyond a reasonable doubt.

The question is whether the watching, waiting and concealment would suffice, together with an intent to do grievous bodily harm, to lift this to the level of first degree.

In reading various cases around, although there is some fuzziness in some of the cases, from some of the jurisdictions, the Court concludes that the evil that is sought to

protect against here, the lying in wait, is sufficient that the mere lying in wait, without a specific intent to kill, would raise the offense to murder in the first degree. I think the cases do ultimately hold that. The closest suggestion that I could get to this case, comes from a California case, *People v. Harrison,* which appears at 381 P.2d 665; also at 59 Cal.2d 622, and 30 Cal.Rep. A–41 [841].

This was a case in which there was a question of what sufficient proof of concealment and watchful waiting were, under a lying-in-wait statute in California. This is what the Court says at [841 Cal.Rptr. 841] 381 P.2d 665:

"From the evidence that Defendant had armed himself with a butcher knife, that he was not observed on the street prior to the attack, and that he attacked Ms. Martin immediately upon her emergence from the apartment house, the jury could reasonably conclude that he was waiting for her with the intention of killing, or inflicting injury upon her, and that the killing was accomplished by means of his watching and waiting in concealment."

Therefore a lying-in-wait instruction to a jury defined, in that case, first degree murder, since she died, was sustained. But the key language, of course, was: "Or inflicting injury upon her."

There there was no specific intent required in that case to lift this murder in this case from the second degree to the first, or from a lesser degree to the first. I am not sure what degrees they had in California.

It is true in the *Harrison* case, and this is one of interesting things to observe in all of these lying-in-wait cases. There often is a relationship between the assailant and the victim. Strictly speaking, that is not required. I don't see in any of the discussion in any of the cases that say that there must be. Indeed, if the evil is to particularly punish those who would lie in wait and prey upon innocent people, then the statute makes sense in the

same way particularly vicious kinds of murders; poison for example.

Murder by poison is enough to punish with the maximum penalty that the law allows, murder in the first degree. So the Court does accept the State's theory that lying in wait is effectively an alternative to premeditated murder, and that it may be the mere infliction of injury that is in the mind of the assailant, if, in fact, there is independent proof of lying in wait.

The Court finds, as I stated earlier, that there is independent proof of concealment, and watchful waiting in this case. There was clearly an intent to do grievous bodily harm; witness the knife, the terrible knife.

The Court, therefore, finds that the State has carried its' burden of proof of attempted murder in the first degree with regard to Count 1. That finding is therefore entered.

In Maryland, murder is a common law crime, the proof of which requires a showing that a criminally responsible human being, with malice,[1] killed another human being. *Campbell v. State,* 293 Md. 438, 441–42, 444 A.2d 1034 (1982); *Jackson v. State,* 286 Md. 430, 435–36, 408 A.2d 711 (1979); *State v. Ward,* 284 Md. 189, 194–96, 396 A.2d 1041 (1978); *Smith v. State,* 41 Md.App. 277, 280–82, 398 A.2d 426, *cert. denied,* 284 Md. 748 (1979). The concept of "malice", in addition to a mental element, encompasses two additional related, but separate elements: the absence of justification or excuse and the absence of mitigatory circumstances. Gilbert and Moylan, § 1.4–3; *Glenn v. State,* 68 Md.App. 379, 385, 404, 511 A.2d 1110, *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986). *See also Evans v. State,* 28 Md.App. 640, 705, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976). The mental element is "the intention

---

1. For an incisive analysis of the concept of "malice", and the demise of its historical companion, "aforethought", *see Glenn v. State,* 68 Md.App. 379, 398–405, 511 A.2d 1110, *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986); Gilbert and Moylan, Maryland Criminal Law: Practice and Procedure, § 4.56, 602–605.

to do a particular act or thing", Gilbert and Moylan, *supra*, which includes four varieties of intent:

1. The specific intent to kill,

2. The specific intent to inflict grievous bodily harm,

3. The general intent to do the death—producing act in the course of the commission, or attempted commission, of a felony, ... and

4. The general intent to do a life-endangering act with reckless and wanton disregard of the consequences....

*Smith*, 41 Md.App. at 281, 398 A.2d 426. *See Glenn*, 68 Md.App. at 384–85, 511 A.2d 1110. Each of these intents, in turn, is an element of a particular kind of murder. *Id.*, 68 Md.App. at 384, 511 A.2d 1110. Consequently, there are four basic kinds of murder: (1) intent-to-kill murder; (2) intent to commit grievous harm murder; (3) felony murder; and (4) depraved-heart murder. *Id.*, 68 Md.App. at 385, 511 A.2d 1110. *Id.*, 68 Md.App. at 388, 511 A.2d 1110.

■ Maryland Code Ann. art. 27, § 407 and its statutory cousins, §§ 408–410, do not create new statutory crimes or affect, in any way, the definition of the crime of murder; they merely divide the common-law crime into degrees. *See Campbell*, 293 Md. at 441, 444 A.2d 1034; *Jackson*, 286 Md. at 435–36, 408 A.2d 711; *State v. Frye*, 283 Md. 709, 712–13, 393 A.2d 1372 (1978); *Davis v. State*, 39 Md. 355, 374 (1874). *See also Lindsay v. State*, 8 Md.App. 100, 104 n. 6, 258 A.2d 760 (1969), *cert. denied,* 257 Md. 734 (1970). By their enactment, the legislature spelled out a number of aggravating circumstances, the presence of which in the perpetration of a murder will constitute that murder one in the first degree. *Smith*, 41 Md.App. at 282, 398 A.2d 426. Thus, a killing committed during the perpetration, or attempted perpetration, of certain enumerated felonies (§§ 408–410), by the use of poison (§ 407), by "lying in wait" (§ 407) or willfully, deliberately, and premeditatedly (§ 407) is murder in the first degree. "All other kinds of murder shall be deemed murder in the second degree." § 411.

But we are not here called upon to resolve an issue concerning the consummated crime of murder; rather, the question before us involves attempted murder in the first degree. Query: Which of the four intents, proof of which would support the completed crime of murder would also sustain a conviction for attempted murder either in the first or second degree? We seek the answer by reviewing the law of attempts.

The Court of Appeals recently summarized the law of attempts in *Cox v. State*, 311 Md. 326, 534 A.2d 1333 (1988):

Maryland does not have a general statute defining the offense of attempt. Rather, it has adopted the common law concept that the crime of attempt consists of intent to commit a particular offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation. *Young v. State*, [303 Md. 298] at 302, 493 A.2d [352] at 354 [1985]; *Hardy v. State*, 301 Md. 124, 138–39, 482 A.2d 474, 482 (1984); *Lightfoot v. State*, 278 Md. 231, 232–38, 360 A.2d 426 (1976). In the literal sense, the word attempt means to try, it implies an effort to bring about a desired result. Hence, an attempt to commit a crime requires a specific intent. *See R. Perkins & R. Boyce, Criminal Law*, 637 (3d ed. 1982).

The crime of attempt is an adjunct crime, it cannot exist by itself, only in connection with another crime. *Hardy v. State, supra,* 301 Md. at 139, 482 A.2d at 482. Furthermore, it is not an essential element of a criminal attempt that there be a failure to consummate the commission of the crime attempted. *Lightfoot v. State, supra,* 278 Md. at 231, 360 A.2d at 426. The crime of attempt expands and contracts and is redefined commensurately with the substantive offense. *Hardy v. State, supra,* 301 Md. at 139, 482 A.2d at 482.... (footnote omitted)

*Id.,* 311 Md. at 330–31, 534 A.2d 1333. A necessary element of an attempted crime, then, is the specific intent to commit

the substantive crime. In the case of attempted murder, the specific intent must be to commit the crime of murder.

In this respect, attempted murder, although a different crime than assault with intent to murder, *see State v. Holmes*, 310 Md. 260, 272, 528 A.2d 1279 (1987), shares a common element with assault with intent to murder. The latter crime consists of an assault, committed with the intent to murder. *Jenkins v. State*, 59 Md.App. 612, 616, 477 A.2d 791 (1984), *aff'd in part and rev'd in part, State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986). Its intent element requires proof of "a specific intent to kill", which need only be "such that, if the offense had been completed, it would have been either first or second degree murder." *Holmes*, 310 Md. at 272, 528 A.2d 1279; *See also Jenkins*, 307 Md. at 515, 515 A.2d 465; *Glenn*, 68 Md.App. at 388, 511 A.2d 1110. The intent element of attempted murder also requires proof of a specific intent to kill; however, in the case of attempted murder in the first degree, the specific intent to kill must, in addition, be willful, deliberate, and premeditated. *Holmes*, 310 Md. at 272, 528 A.2d 1279. The common element shared by attempted murder and assault with intent to murder is, therefore, the specific intent to kill.

Given this common element, what we said in *Glenn* concerning the intent necessary to sustain a conviction for assault with intent to murder is equally applicable to attempted murder:

> Of the four basic types of murder, specific-intent-to-kill murder is the only one wherein there is a conscious and purposeful design to accomplish the death of the victim. None of the others contains, as a necessary element, any intent that the victim die. A depraved-heart murder is a mere general intent crime—the general intent to do the reckless, life-endangering act with wanton disregard of the human consequences. A felony-murder has no necessary specific intent that harm should come to a victim, let alone that the victim should die. There is merely a general intent to perpetrate a felony. Some felonies, of

course, include lesser specific intents, but not an intent that death result. With respect to both depraved-heart murder and felony-murder, the death of the victim is not only unintended but sometimes not even reasonably foreseen.

\* \* \* \* \* \*

In the case of intent-to-do-grievous-bodily-harm murder, on the other hand, the failure of that intent to establish *ipso facto*-by automatic operation of law-the intent to murder is not so immediately apparent. This is so because there is, in these cases, an actual harm specifically intended for the assault victim. Thus, this form of murder is a specific-intent crime rather than a mere general-intent crime. The critical distinction that needs to be made, however, is between *the results specifically intended, not between the presence or absence of a specific intent.* Although there is the purpose or design that the victim should suffer serious physical harm, there is no necessary purpose or design that the victim should die. (Emphasis in original)

68 Md.App. at 388–89, 389–390, 511 A.2d 1110. In other words,

One can intend only that type of murder which, if done, would be intentional. It is a truism that one cannot intend the unintended.

68 Md.App. at 397, 511 A.2d 1110.

The decision of the Court of Appeals in *Cox* upholding the accused's conviction and sentence for the crime of attempted voluntary manslaughter is consistent. The Court held that "when an individual, engaged in an altercation, suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation, and where the attempt results in something less than the actual wrongful killing, that person may be convicted of attempted voluntary manslaughter under the common law of Maryland." 311 Md. at 334, 534 A.2d 1333. By that holding, which was premised on the definition of voluntary man-

slaughter as "an *intentional* homicide, done in a sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool," (emphasis in original), 311 Md. at 331, 534 A.2d 1333, the Court implicitly recognized that even attempted voluntary manslaughter requires a specific intent to kill.

Turning to the case *sub judice*, the first question that we must address is just what finding did the trial court make with regard to the intent with which appellant committed the instant offense. The State contends that "implicit in the trial court's comments is its conclusion that Appellant did harbor an intent to kill when he decided to stab Mrs. Choi—a conclusion manifestly in accord with the evidence. The only question, the court continued, was premeditation." Appellant, on the other hand, argues that, although the court did not exclude the possibility that appellant intended to kill the victim, neither was it able to exclude a reasonable possibility that appellant's intent was other than a specific intent to kill. Accordingly, appellant asserts that the trial court entertained a reasonable doubt as to whether appellant had a specific intent to kill, the intent required to convict him of attempted murder in either degree.

We note at the outset that the trial court's comments on this point are almost as ambiguous as appellant's criminal agency is clear. The State is correct, the court could have entertained a reasonable doubt on the question of premeditation and still found that appellant possessed the requisite specific intent to kill. *See Ferrell v. State*, 304 Md. 679, 688, 500 A.2d 1050 (1985). The problem with the State's argument is that the court's comments demonstrate that this is simply not what the court did. The court had no difficulty concluding that appellant planned the crime and waited for his victim; its difficulty was in determining the intent that appellant harbored at that time. Thus, the court posed the question, "What purpose can reasonably be inferred?" Immediately thereafter, the court noted that "but for the knife, it's hard to get to the specific intent to kill" and then concluded, albeit referring to "necessary premedi-

tation", that "the problem with the facts in the end is that the knife was there, *but the Court still has some doubt as to whether the knife was there as a potentially threatening instrument that could cause grievous bodily harm, as opposed to an instrument that was being carried directly for the purpose of killing somebody.*" (Emphasis added). We think it is clear that the court's doubt was as to appellant's intent, rather than premeditation.

Having concluded that the court did not find that appellant possessed a specific intent to kill when he stabbed the victim, it follows that, unless the court's alternative basis for finding him guilty of attempted murder in the first degree is viable, that finding precludes appellant's being found guilty of attempted murder in either degree. We now address the alternative finding.

■ In reaching its verdict, the court found that appellant clearly had the intent to do grievous bodily harm to the victim and that appellant laid in wait to effectuate the crime. These findings are sufficient to support a conviction for attempted murder in the first degree, the court reasoned, because proof of lying in wait is an alternative method of proving premeditated murder. Assuming the court is correct, that proof of lying in wait is effectively an alternative to, rather than an example of, premeditated murder[2], the question remains whether such proof suffices

---

**2.** An observation pertinent to this point was made in *Smith,* 41 Md.App. at 291 n. 7, 398 A.2d 426:

One interesting difference between the Pennsylvania Act of 1794 and the Maryland Act of 1809 is that Pennsylvania refers to "any *other* kind of wilful, deliberate and premeditated killing," whereas Maryland refers simply to "any kind of wilful, deliberate and premediated killing". By implication, Pennsylvania poison murders and lying-in-wait murders would seem to require premeditation whereas the Maryland statute does not suggest any such necessary common denominator characteristic. (Emphasis in original).

*See also Evans v. State,* 28 Md.App. at 685–86 and 685 n. 21, 349 A.2d 300, in which we hypothesized, by way of *dicta,* that "a killing by lying in wait need not, of necessity, be deliberate and premeditated to constitute murder in the first degree." *But see Holmes,* 310 Md. at 272 n. 5, 528 A.2d 1279, where the Court of Appeals, after stating that

when the crime is attempted first degree murder, rather than the consummated crime. We hold that it does not.

The intent element of attempted murder, as we have seen, requires proof that the perpetrator intended to commit the crime of murder, *i.e.,* had the specific intent to kill. Thus, it is a specific intent crime, the object of the intent being the accomplishment of the necessary result of completing the substantive crime, *i.e.,* the death of the victim. The intent element of the consummated crime of murder, on the other hand, includes, in addition to the intent to kill, three additional intents, any one of which would support a conviction for the completed crime. In short, the mental element of attempted murder, like that of assault with intent to murder, is more restrictive than the mental element of the consummated crime, *see Glenn,* 68 Md.App. at 388, 511 A.2d 1110; *see also Finnegan v. State,* 33 Md.App. 251, 255–56 n. 1, 364 A.2d 124 (1976); *Blake v. State,* 29 Md.App. 124, 127 n. 1, 349 A.2d 429 (1975); murder may be committed even though the perpetrator had no intent to kill. Thus, we observed, again in *Glenn* that:

> In distinguishing the intent to kill from something just as bad, but different, a helpful analogy is found in the statute law elevating certain of the more blameworthy types of murder to the first degree. Of the various modes of aggravation, the best known is that of "willful, deliberate and premeditated killing." Article 27, § 407. This particular form of aggravation applies only to intent-to-kill murder, not to the other three types. (Other modes of aggravation may raise other forms of murder to the first-degree plateau). It is the killing itself that must

---

"intent required for first degree murder is that it shall have been wilful, deliberate, and premeditated," supplemented that definition as follows:

> That is of course, unless the first degree murder conviction is based on proof of a homicide committed in the perpetration, or attempted perpetration, of one of the felonies enumerated in §§ 408–410, Art. 27, Maryland Code (1957, 1982 Repl.Vol.).

Significantly, the court did not mention poison murders or lying-in-wait murders as a separate category of first degree murder.

be premeditated, not the infliction of grievous bodily harm, not the perpetration of a felony, and not the reckless, life-endangering act. Of the blameworthy mental states, the specific intent to kill has always occupied a special niche of its own. It was, of course the prototype. It is today the only *mens rea* that rises to the first degree when premeditated.

68 Md.App. at 394–95, 511 A.2d 1110.

■ An attacker lying-in-wait for a victim may have any one of the four intents, previously set out, which would support a conviction for murder, and, if the victim died as a result of the attack, the attacker is guilty of murder in the first degree. This is so because the legislature has so decreed; by enacting § 407, it has determined that such conduct is so atrocious and blameworthy as to warrant the more severe penalty provided for murder in the first degree. In such a case, it is the conduct of the attacker and the result of that conduct, rather than the attacker's specific intent to bring about the result, that is dispositive.[3] However, in such a case, the character of the crime of murder is not changed. In the case in which the victim does not die, on the other hand, the attacker may be guilty of attempted murder in the first degree, but only if he or she had the premeditated intent to kill. This is true because that intent is a necessary element of the crime. *See Holmes*, 310 Md. at 272, 528 A.2d 1279. The legislature has not prescribed that the aggravating factors which elevate murder to the first degree will also serve to elevate attempted murder to the first degree. Thus, when the victim survived, application of the aggravating factors no longer was possible. Indeed, were such factors applicable the nature and character of the crime of attempted murder would be changed; were they to apply, the critical element

---

**3.** The aggravating factors which elevate murder to the first degree relieve the State of its burden of proving wilfulness, deliberateness and premeditation. *See, e.g., Newton v. State*, 280 Md. 260, 268–69, 373 A.2d 262 (1977).

of attempted murder would no longer be the intent to murder.

It is true that, from proof of lying-in-wait and of an intent on the part of the perpetrator to cause grievous bodily harm, an evidentiary inference that the perpetrator harbored an intent to kill the victim may arise. *See Jenkins*, 307 Md. at 513–15, 515 A.2d 465. In this case, however, such an inference is not available in light of the trial judge's finding that he had a reasonable doubt as to appellant's intent to kill. Indeed, given the nature of attempted murder, his finding that appellant's intent was to do grievous bodily harm, itself, demonstrates the court's error. Its judgment must be reversed.

2.

Finally, appellant challenges the propriety of his conviction and sentence, pursuant to Maryland Code Ann. art. 27, § 36(a), for wearing and/or carrying a concealed weapon, or carrying a weapon openly with intent to injure. Apparently conceding that application of the "required evidence test", *see Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986), does not result in its merger into the offense of robbery with a dangerous or deadly weapon, appellant nevertheless argues that the weapon conviction and the robbery conviction should merge by application of the "Rule of Lenity". *See Dillsworth v. State*, 308 Md. 354, 361, 519 A.2d 1269 (1987). Specifically, he contends:

Its [§ 36(a)] obvious purpose is to provide a penalty when a dangerous or deadly weapon is carried in a way that enhances its danger. When the weapon is actually used in a crime, however, and the evidence that it was carried is its use in the crime, punishment is actually provided for when the individual is punished for the commission of the offense. This is particularly true with armed robbery, an offense of which Appellant was convicted: The legislature provided an alternative means for enhancing the penalty for a robbery committed with a dangerous and

deadly weapon. Md.Ann.Code Art. 27, § 488 (1987 repl. vol.). Consequently it could not have contemplated separate punishment for the robber who uses such a weapon to rob both for the armed robbery and for carrying the weapon used to commit it.

In *Johnson v. State,* 56 Md.App. 205, 215, 467 A.2d 544 (1983), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984), we reviewed various cases in the Supreme Court, the Court of Appeals, and our own Court involving the application of the Rule of Lenity and determined:

> A common thread connects all the cases we have just discussed. It is the assumption (often not articulated) that under the circumstances of a given case, it is reasonable to believe that the legislature that enacted a particular statute or statutes would express some intent as to multiple punishment. That assumption is appropriate when a single act is charged as multiple offenses under a single statute ..., where the subject of two statutes is of necessity closely intertwined ..., where one offense is necessarily the overt act of a statutory offense ... and where one statute, by its very nature, affects other offenses because it is designed to effect multiple punishment.... Under those circumstances, it is not unreasonable to assume that the legislative body contemplated the possibility of multiple punishment and to conclude that unless the intention in favor of multiple punishment is clear ..., the Rule of Lenity or its equivalent should be applied against the imposition of multiple punishment. (Citations omitted)

Applying these factors to the facts *sub judice* makes it clear that this is not an appropriate case for application of the Rule of Lenity. *See also Dillsworth,* 308 Md. at 361–67, 519 A.2d 1269.

JUDGMENT AS TO ATTEMPTED MURDER IN THE FIRST DEGREE, REVERSED; JUDGMENT AS TO THE CARRYING OF A DEADLY WEAPON, AFFIRMED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY MONTGOMERY COUNTY.

GARRITY, Judge, dissenting.

I respectfully dissent from the majority opinion as to Count # 1.

The appellant's victim was Chung Sook Choi, a Korean widow who worked in the dental lab on the third floor. Because the hallway was "really dark," Mrs. Choi turned on a light in the restroom, then started to unlock the door to her lab. At that instant, the appellant plunged a large butcher knife deep into Mrs. Choi's back at her waist, about two inches to the left of her spine. The knife sliced through several major back muscles, lacerated blood vessels within the abdominal cavity, and amputated the lower portion of her left kidney.[1]

Mrs. Choi fell to the floor. She looked up and saw a knife on the floor and a man standing over her. The man stepped on her, grabbed her purse and ran.

A passerby saw her almost immediately, and a rescue team arrived within "a matter of seconds." She was at the hospital in approximately seven minutes. Her doctor testified that during surgery, Mrs. Choi almost died on several occasions.

It has been consistently held in Maryland that a finding either that a killing was wilful, deliberate or premeditated, or that it was in perpetration of a robbery, would support a

---

1. A doctor who treated Mrs. Choi described her wound:
   There was only one entrance wound. The entrance wound was extremely wide in its diameter, approximately five inches wide. This would indicate either an extremely large instrument, with a single penetration, or a slicing motion with a single instrument that was very sharp.
   The wound was at least six inches deep—there was no way to determine exactly where the blade stopped because the organs were free to move about inside the abdomen.

verdict of first degree murder. *Parker v. State*, 7 Md.App. 167, 254 A.2d 381 (1969), *cert. denied*, 402 U.S. 984, 91 S.Ct. 1670, 29 L.Ed.2d 150 (1971). While lying-in-wait epitomizes a cold-blooded attack devoid of any warning to the victim and serves as an extreme example of wilfulness, deliberateness, and premeditation, it is also an aggravating factor in its own right. *Evans v. State*, 28 Md.App. 640, 686, 349 A.2d 300 (1975), *aff'd*, 278 Md. 197, 362 A.2d 629 (1976).

But for the tenacious refusal of the victim to die, this case would have presented a classic example of first degree murder. Due to her survival, it is clearly one of attempted first degree murder.

Although the trial judge's loquacious explanation of his thoughts may have given rise to the appellant's "reasonable doubt" argument, I interpret the court's comments differently.

In summation of his findings, the trial judge stated:
The Court finds, as I stated earlier, that there is independent proof of concealment, and watchful waiting in this case. There was clearly an intent to do grievous bodily harm; witness the knife, the terrible knife.

The Court therefore finds that the State has carried its burden of proof of attempted murder in the first degree with regard to Court # 1. That finding is therefore entered.

I believe that the trier of fact determined that the appellant's act of lying-in-wait sufficiently evidenced his premeditated intent to murder, when coupled with the actual use of the butcher knife to cause the type of wound which could have resulted in death as a natural consequence.

I would conclude, therefore, beyond any reasonable doubt, that the evidence was sufficient to prove attempted murder in the first degree. I would affirm the finding of the trial court.