749 A.2d 787

**Andre Ricardo ROACH**

v.

**STATE of Maryland.**

**No. 114, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 13, 2000.

420

Geraldine K. Sweeny, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

Petitioner, Andre Ricardo Roach, was convicted by a jury of first degree murder and the use of a handgun in the commission of a crime of violence. The issue we must decide in this case is whether Petitioner was entitled to a voluntary manslaughter instruction based upon a theory of imperfect self-defense. We shall hold that he was so entitled.

## I.

Donald Wayne Bunn was shot and killed on February 16, 1997 in the parking lot of a liquor store located in Prince George's County. Bunn, and a friend of his named Reginald Bowen, went to the liquor store to buy some beer. As they were leaving the store, Petitioner and three of his friends were outside in a car. Petitioner and Bowen began arguing over a small debt that Petitioner claimed Bowen owed to him. The verbal argument escalated into a fist fight, with Bowen's friend Bunn entering the fight to assist him, and Petitioner's friends joining in to assist him. Bowen left the melee and ran into the liquor store to get help. He told the security guard that Petitioner had a gun. During the altercation, Bunn was shot twice. He died as a result of his wounds.

The jury heard conflicting details about the shooting. The State introduced four written statements Petitioner gave to the police on April 24, 1997, the night he was arrested. In his first statement, Petitioner denied any knowledge of who shot Bunn. Petitioner said that Reginald Bowen, to whom he referred as "Reggie," owed him $5.00, and that the fight started when Reggie hit him, knocked him down and pinned him to the ground. Reggie let him go when they heard the gun shots from across the street. Petitioner denied having a gun. In his second statement, Petitioner wrote an apology to Bunn's family. He said, "I am very sorry this had to happen but I was a juvenile at the time and I was scared just like anybody would of been . . . ."

In his third statement, Petitioner told the police that he and some friends went to the liquor store in a car. While they were waiting in the parking lot, he and Reggie had some words over the $5.00 debt. Reggie tried to hit him and they began to fight. A friend of Petitioner's jumped out of the car to help Petitioner. Then, Reggie's friend (Bunn), joining the fight to aid Reggie,

> came straight to me and start[ed] beating [me] to the ground so I seen the gun on the ground and Reggie['s] friend seen the gun so I thought that he was going to kill

me right there on the scene but I got the gun from him and we was fighting for the gun until somebody said the Police is in the store so he didn't care if the Police was in the store so I hit him with the gun and he start[ed] going across the street me and him so we start fighting again and because of him been drunk he fell over the curb and tried to take the gun and I shot him but I didn't want to because I thought he was going to tried to do something to me.... When I picked up the gun, Reggie's friend grabbed me. Vito yelled "hit him!" He rushed me. I hit him with the gun. We kept struggling. We both continued struggling. We were across the street (George Palmer Highway). He fell at the curb in the parking lot of the Belle Haven Apartments. He tried to get up. I shot him.

As to who owned the gun, initially Petitioner told the police that the gun belonged to his friend, Moe, and that Moe had dropped it during the fight. Later in the same statement he admitted that the gun was his. Petitioner's fourth statement did not address the details surrounding the shooting. Among other things, he described the person he shot and his disposition of the gun he used in the shooting.

At trial, Petitioner testified that while he was parked at the liquor store with his friends, he got out of the car and was standing in the parking lot when he saw Bowen. They began to argue over an alleged $5.00 debt. Bowen struck the first blow. Bunn, whom Petitioner described as "way bigger," jumped atop Petitioner and wrestled him to the ground. Petitioner's friend Perry jumped out of the car to assist Petitioner. Bowen and Perry began to fight, leaving Petitioner and Bunn fighting each other. Bunn had Petitioner on the ground, choking him, when a gun fell out of Bunn's waistband. Bunn went for the gun, releasing his hold on Petitioner, enabling Petitioner to get up and run across the street in an effort to get away. Bunn chased Petitioner and caught up with him on the other side of the street. Bunn grabbed him from behind, and as Petitioner attempted to grab the gun from Bunn's hand, they fell over the curb. That is when the first shot was fired. Petitioner's hand was atop Bunn's hand

that held the gun, and when Petitioner pulled back, Bunn lunged and the gun went off a second time. Petitioner testified that after the second shot, he picked up the gun and ran away, unsure whether Bunn had been hit.

At the close of all of the evidence, Petitioner moved for judgment of acquittal. He argued to the trial court that the gun went off "accidentally, or whatever, and . . . that might be an *imperfect defense*. . . . There has been no showing of malice." (Emphasis added.) The trial judge denied the motion.

The court and counsel for both parties then discussed proposed jury instructions:

THE COURT: I have prepared instructions. I don't believe that manslaughter is necessarily an option in this because this is either self-defense or it is murder.

[DEF. ATT'Y]: If the jury does not believe that it was self-defense, if they believe that the weapon went off accidentally, and that—and/or that the defendant was defending himself, then I believe it does come into play with manslaughter, if they believe that there was absence, if they believe that he actually did the killing, then they would have a choice.

THE COURT: Would it be hot killing, killing in hot blood? In other words, in order for it to be manslaughter, there are certain things that must exist. And first and foremost, it must be a killing in a heat of passion. . . . It wasn't a heat of passion.[1] It was simply him running away and being caught up with by the decedent in a struggle over a gun which went off.

[DEF. ATT'Y]: Well, then, if that is the case, then you have to give an accident, not only self-defense, but you also have to give an accident.

THE COURT: I give self-defense because it is generated here.

---

1. *See infra* note 3 for our analysis of this response by the trial court to defense counsel's request for a jury instruction on manslaughter.

After a discussion in chambers, which was neither recorded nor summarized for the record, the judge instructed the jury on first and second degree murder, but not on manslaughter, and on perfect self-defense, but not on imperfect self-defense. Defense counsel excepted to the court's failure to instruct on manslaughter. The State excepted to those portions of the first and second degree murder instruction informing the jury that in order to convict, the State must prove that there were no mitigating circumstances. The court agreed with the State, and re-instructed the jury on first and second degree murder, this time omitting any reference to mitigating circumstances. Defense counsel objected.

As mentioned earlier, the jury convicted Petitioner of first degree murder and the use of a handgun in the commission of a crime of violence. The court sentenced him to life imprisonment on the murder count and twenty years consecutive on the handgun count. Petitioner noted a timely appeal to the Court of Special Appeals. That court affirmed in an unreported opinion, reasoning that the trial court correctly refused to instruct the jury on manslaughter by way of imperfect self-defense because there was no evidence tending to establish this defense. In explaining the appropriateness of the trial court's refusal, the intermediate appellate court stated, "[Petitioner] could . . . not have believed that he was using a level of force necessary to defend himself by shooting the victim, because, as he testified, he did not know the victim had been shot." [2] We granted certiorari to review whether the trial

---

2. We read the Court of Special Appeals' stated rationale for its affirmance of Petitioner's convictions as having two possible, distinct, albeit related, interpretations or implications. Each of them goes to there being, as a matter of law, a lack of sufficient evidence at trial to generate the issue of imperfect self-defense, therefore justifying the Circuit Court's refusal to give the jury an instruction on manslaughter. The first is that, at the time of his altercation with Bunn, Petitioner did not have, or could not have had, an actual and honest belief that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to stave off that danger. The second is that the evidence before the jury favorable to Petitioner related exclusively to the issue of accident and not self-defense. As we shall explain later, although Petitioner's testimony at trial encompassed solely a theory of

court erred in refusing to give the jury an instruction on manslaughter based on a theory of imperfect self-defense.

## II.

■ Petitioner contends that the trial court erred in refusing to propound an instruction to the jury on voluntary manslaughter. In particular, he maintains that because the evidence generated the issue of imperfect self-defense, he was entitled to an instruction on manslaughter under such a theory, which if believed by the jury would have mitigated the murder charge to manslaughter.

■ The State concedes that the defense presented sufficient evidence to generate an instruction on perfect self-defense.[3] The State argues, however, that Petitioner presented insufficient evidence to generate the issue of imperfect self-

---

an accidental shooting, there was other evidence before the jury that could have been viewed under the guise of self-defense. Nor do we think it true, given the various evidence, however contradictory, that Petitioner lacked, as a matter of law, the requisite belief that he was in imminent danger at the time of his altercation with Bunn and that deadly force was a necessary response.

**3.** Although the State does not argue non-preservation, it seems to suggest in its brief that the matter is not preserved. The State writes that "[c]ontrary to Roach's present appellate contention, never precisely articulated before the trial judge, neither his statements to the police nor any other evidence suggested that Roach held an honest but unreasonable belief that he was required to use deadly force to defend himself from Donald Bunn." The Court of Special Appeals addressed the issue on the merits, and we shall as well. *See Hopkins v. State*, 352 Md. 146, 154, 721 A.2d 231, 235 (1998).

Additionally, we note that although a close call, and "[a]lthough the appellant was on perilously thin ice in terms of preservation, we think the claim has been adequately preserved and we will address the merits." *Watkins v. State*, 79 Md.App. 136, 138, 555 A.2d 1087, 1088 (1989) (citations omitted). *See also Sims v. State*, 319 Md. 540, 549, 573 A.2d 1317, 1321 (1990). Petitioner's counsel asked the court for an instruction on manslaughter, and had earlier commented that the gun went off "accidentally, or whatever, and ... that might be an *imperfect defense* .... There has been no showing of malice." (Emphasis added.)

While the basis of his request for a manslaughter instruction was perhaps not the most artfully articulated, Petitioner adequately conveyed the notion to the trial court that he wanted a jury instruction on mitigating his culpability to that for manslaughter. It appears from the

defense. The State contends, first, that the record is devoid of any indication that Petitioner believed he needed to use force, much less deadly force, to defend himself and, second, that Petitioner was the aggressor.

 The rules of trial procedure addressing instructions to the jury, as promulgated by this Court, provide, in pertinent part, as follows:

The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

Maryland Rule 4–325(c). It is clear that the trial judge is required to "give a requested instruction which correctly states the applicable law and which has not been fairly covered in instructions." *Lansdowne v. State*, 287 Md. 232, 239, 412

---

record that the trial judge assumed Petitioner's theory of mitigation was that of hot-blooded response to provocation, or heat of passion. We reiterate, however, that "the . . . theory of imperfect self defense is not limited by or bound up with the concept of the mitigating defense of heat of passion." *State v. Faulkner*, 301 Md. 482, 489–90, 483 A.2d 759, 763 (1984) (discussing the opinion of the California Supreme Court in *People v. Flannel*, 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (1979)). The trial judge, charged with knowledge of the law, should have recognized that Petitioner was requesting a manslaughter instruction based upon imperfect self-defense. *See State v. Babb*, 258 Md. 547, 550, 267 A.2d 190, 192 (1970). *See also Medical Mutual v. Evans*, 330 Md. 1, 34, 622 A.2d 103, 119 (1993) (stating that judges "are also presumed to know the law and lawfully and correctly to apply it" (citing *Smith v. State*, 306 Md. 1, 8, 506 A.2d 1165, 1168 (1986) (in turn citing *Hebb v. State*, 31 Md.App. 493, 499, 356 A.2d 583, 587 (1976)))). Moreover, it appears that the trial judge drew his instructions from the Maryland State Bar Association's criminal pattern jury instructions, specifically the instruction entitled "Homicide—First Degree Premeditated Murder, Second Degree Specific Intent Murder and Voluntary Manslaughter (Imperfect Self–Defense)." *See* MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS § 4:17.2, at 226–29 (1986, 1995 Supp.). As its title reflects, MPJI–Cr. 4:17.2 includes a manslaughter instruction where the mitigation is imperfect self-defense. *See also* D. AARONSON, MARYLAND CRIMINAL JURY INSTRUCTIONS AND COMMENTARY § 4.23c, at 341–43 (2d ed.1988).

A.2d 88, 91 (1980). Whether an instruction must be given depends upon whether there is any evidence in the case that supports the instruction. *See, e.g., Binnie v. State,* 321 Md. 572, 582, 583 A.2d 1037, 1041 (1991) (restating that "it is incumbent upon the court, ... when requested in a criminal case, to give an ... instruction on every essential question or point of law supported by evidence." (quoting *Smith v. State,* 302 Md. 175, 179, 486 A.2d 196, 198 (1985) (in turn quoting *Bruce v. State,* 218 Md. 87, 97, 145 A.2d 428, 433 (1958)))). Whether the evidence is sufficient to generate the desired instruction in the first instance is a question of law for the judge. *See Dykes v. State,* 319 Md. 206, 221, 571 A.2d 1251, 1259 (1990). "The task of this Court on review is to determine whether the criminal defendant produced that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired." *Dishman v. State,* 352 Md. 279, 292, 721 A.2d 699, 705 (1998).

In *Dykes,* we discussed the "some evidence" test in the context of the trial court's refusal to give an instruction on imperfect self-defense. We noted:

> *Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self-defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the defendant did not kill in self-defense.

*Dykes,* 319 Md. at 216–17, 571 A.2d at 1257.

A trial court has broad discretion in determining which instructions to give the jury and, again, need give a

requested instruction only where the issue has been generated by the evidence adduced at trial. *See State v. Martin,* 329 Md. 351, 356, 619 A.2d 992, 994 (1993). The trial judge is not required to instruct on a lesser included offense unless there is evidence presented at trial that would give the jury a rational basis to conclude that the defendant was guilty of the lesser offense, but not guilty of the greater offense. *See State v. Bowers,* 349 Md. 710, 722, 709 A.2d 1255, 1260 (1998). Finally, it is well settled that an indictment charging common-law murder may sustain a conviction for first degree murder, second degree murder or manslaughter. *See, e.g., Hardy v. State,* 301 Md. 124, 138, 482 A.2d 474, 482 (1984). The question in the present case then becomes whether there was some evidence that would have entitled Petitioner to a manslaughter instruction.

Under the indictment charging Petitioner with first degree premeditated murder, the jury had four choices. It could have acquitted Petitioner of all charges; or it could have convicted him of murder in the first degree, murder in the second degree, or manslaughter. Petitioner was convicted of murder in the first degree.

 A killing is justifiable or excusable if committed in self-defense. Perfect self-defense is a complete defense and results in the acquittal of the defendant. *See State v. Faulkner,* 301 Md. 482, 485, 483 A.2d 759, 761 (1984). In *Faulkner* we reiterated what elements are required "to justify a homicide, other than felony murder, on the basis of self defense." *Id.,* 483 A.2d at 761. Judge Cole, writing for the Court, stated them in the following terms:

(1) The accused must have had reasonable grounds to believe himself [or herself] in apparent imminent or immediate danger of death or serious bodily harm from his [or her] assailant or potential assailant;

(2) The accused must have in fact believed himself [or herself] in this danger;

(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and

(4) The force used must have not been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded.

*Id.* at 485–86, 483 A.2d at 761. *See also Jones v. State*, 357 Md. 408, 422, 745 A.2d 396, 403 (2000).

 We then considered the scenario where a defendant, not the aggressor, held an actual and honest belief that he or she was in apparent imminent or immediate danger of death or serious bodily harm from an assailant or potential assailant, and yet that belief was unreasonable. Under such circumstances, we recognized Maryland law to include the doctrine of imperfect self-defense. *See Faulkner*, 301 Md. at 499–500, 483 A.2d at 768–69.[4] The chief characteristic of imperfect self-defense is that it operates to negate malice, a necessary element of murder; hence, the successful invocation of the defense does not result in complete exoneration of the defen-

---

4. We emphasize that when we adopted the doctrine of imperfect self-defense as a mitigator of murder to voluntary manslaughter in *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984), we did so in an expressly limited fashion, stating, "Our review of the development of the imperfect defense doctrine and examination of the jurisdictions that have addressed circumstances when the doctrine is applicable convinces us that the honest but unreasonable belief standard of imperfect self-defense is the proper one to be followed in Maryland." *Id.* at 499–500, 483 A.2d at 768. This Court has not had occasion to address any other variation of the doctrine of imperfect self-defense, although we did mention other variations in our opinion in *Faulkner*. *See id.* at.489, 483 A.2d at 763 (citing *Allison v. State*, 74 Ark. 444, 86 S.W. 409 (1984), *Reed v. State*, 11 Tex.App. 509 (1882), and *State v. Flory*, 40 Wyo. 184, 276 P. 458 (Wyo.1929), as examples of cases indicating that the doctrine of imperfect self-defense is applicable "where the homicide would fall within the perfect self defense doctrine but for the fault of the defendant in provoking or initiating the difficulty at the non-deadly force level," and citing *State v. Clark*, 69 Kan. 576, 77 P. 287 (1904), as an example of cases recognizing the doctrine "when the defendant used unreasonable force in defending himself and, as a result, killed his opponent."). *But see Cunningham v. State*, 58 Md.App. 249, 257, 473 A.2d 40, 44 (holding that where "all of the testimony establishe[d] unequivocally that the appellant was the aggressor and there was no shred of evidence to indicate otherwise," there was "no adequate support in the evidence to generate a genuine jury issue as to self-defense, perfect or imperfect"), *cert. denied*, 300 Md. 316, 477 A.2d 1195 (1984).

dant but mitigates murder to voluntary manslaughter. *See id.* at 486, 483 A.2d at 761; *Jones,* 357 Md. at 422, 745 A.2d at 403.

This mitigation is warranted insofar as the critical difference between murder and manslaughter is the presence or absence of malice. *See Faulkner,* 301 Md. at 485, 483 A.2d at 761. It is specifically because a murder conviction is dependent upon a showing of malice that we adopted the doctrine of imperfect self-defense in this State and require that the jury be instructed on this doctrine when the evidence so dictates:

> Logically, a defendant who commits a homicide while honestly, though unreasonably, believing that he is threatened with death or serious bodily harm, does not act with malice. Absent malice he cannot be convicted of murder. Nevertheless, because the killing was committed without justification or excuse, the defendant is not entitled to full exoneration. Therefore, as we see it, when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily harm, the defendant is entitled to a proper instruction on imperfect self defense.

*Id.* at 500, 483 A.2d at 769.

Discussing the basic concepts underlying the crime of voluntary manslaughter and the notion of imperfect self-defense, Judge Moylan, writing for the Court of Special Appeals in *Bryant v. State,* 83 Md.App. 237, 574 A.2d 29 (1990), noted:

> Voluntary manslaughter is something other than the mere absence of aggravating factors that would raise the level of guilt to murder in either the first or second degree. It is predicated upon the affirmative presence of some extenuating fact that will operate to mitigate the level of guilt and, therefore, the punishment. One of the extenuating factors that gives rise to the crime of voluntary manslaughter is that of imperfect self defense.

*Id.* at 244, 574 A.2d at 32. For a criminal defendant charged with murder who seeks to avoid a conviction on that charge, at the very least mitigating his culpability to that of voluntary

manslaughter, "[i]mperfect self defense requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so." *Faulkner*, 301 Md. at 500, 483 A.2d at 769 (quoting *Faulkner v. State*, 54 Md.App. 113, 115, 458 A.2d 81, 82 (1983)).

We believe that on the evidence generated in this case, a reasonable jury could have found that Petitioner had a subjective actual belief that his life was in danger and that he had to react with the force that he did, even though the jury may find that these beliefs were unreasonable. Petitioner's third statement to the police, introduced into evidence by the State against him, constituted some evidence of self-defense, both of the perfect and imperfect variety, sufficient to generate the issue. Despite the State's contentions, first, that the record is devoid of any evidence Petitioner believed he needed to use any force, let alone deadly force, to defend himself against the decedent and, second, that it is clear Petitioner was the aggressor in their altercation, the evidence contained in Petitioner's third statement refutes the State's position. Whether the jury would credit that statement, of course, must ultimately be left to the jury alone. To be sure, Petitioner testified at trial that the shooting was accidental. Even if the defense of accident is inconsistent with self-defense, however, a defendant may raise inconsistent defenses. Consequently, as we explained almost a decade ago, "a defendant is entitled to have the jury instructed on any theory of defense that is fairly supported by the evidence, even if several theories offered are inconsistent." *Sims v. State*, 319 Md. 540, 550, 573 A.2d 1317, 1321 (1990), (noting this position to be that of the federal courts as well as "the vast majority of state courts," and citing *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *People v. Perez*, 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934 (1965); *State v. Harris*, 189 Conn. 268, 455 A.2d 342 (1983); *State v. Shehan*, 242 Kan. 127, 744 P.2d 824, 827–28 (1987); *State v. Knowles*, 495 A.2d 335 (1985), *appeal after remand*, 517 A.2d 1075 (Me.1986); *People v.*

*Fuqua,* 146 Mich.App. 133, 379 N.W.2d 396 (1985); *Love v. State,* 441 So.2d 1353 (Miss.1983); *State v. Baker,* 277 S.W.2d 627 (Mo.1955); *State v. Kills Small,* 269 N.W.2d 771 (S.D. 1978); *Booth v. State,* 679 S.W.2d 498 (Tex.Crim.App.1984)).

 Petitioner asks this Court to mandate a bright line rule that in every case where the defense of self-defense is generated, so too is the mitigator of imperfect self-defense. We decline to do so. As noted by Judge Orth, writing for the Court of Special Appeals in *Faulkner v. State,* 54 Md.App. 113, 115, 458 A.2d 81, 82 (1983), "[i]n the frame of reference of legal history, the doctrine of imperfect self defense is of recent origin, and scholars of the law have referred to it as 'not yet far advanced.'" Suffice it to say, at this time we reiterate what we said in *Faulkner* and repeated in *Dykes.* Agreeing with the Court of Special Appeals, we said in *Faulkner* that

> [i]t is hard to imagine a situation where a defendant would be able to produce sufficient evidence to generate a jury issue as to perfect self defense but not as to imperfect self defense. It seems clear to us that if the reasonableness of a defendant's belief is at issue, as it is in self defense, *a fortiori,* the existence of that belief is also at issue. Therefore, the jury must reject the reasonableness of the defendant's belief as well as the existence of that belief to find the defendant guilty of murder.

*Faulkner,* 301 Md. at 502–03, 483 A.2d at 770 (citing *Faulkner v. State,* 54 Md.App. 113, 118 n. 5, 458 A.2d 81, 84 n. 5 (1983)). In *Dykes,* likewise, we said:

> It is difficult to envision circumstances which are sufficient to generate the issue of justification or excuse by way of perfect self defense which do not also generate the issue of mitigation by way of imperfect self defense. Generally, if a defendant is entitled to an instruction with respect to the former, he will be entitled to an instruction with respect to the latter.

*Dykes,* 319 Md. at 214, 571 A.2d at 1255–1256 (quoting *Faulkner,* 54 Md.App. at 118 n. 5, 458 A.2d at 84 n. 5 ).[5] We adhere to these statements with the same conviction with which we originally uttered and repeated them. Nevertheless, although we remain hard pressed to divine a situation where the defendant is entitled to a perfect self-defense instruction and yet is not also entitled to an imperfect self-defense instruction, we shall not in the abstract totally preclude it.

 In conclusion, we hold that the trial court should have given the jury an instruction on imperfect self-defense in response to the requests made by Petitioner. Under the circumstances presented in the instant case, because the matter was not fairly covered in the instructions actually given, the trial judge committed reversible error in refusing to propound to the jury a manslaughter instruction based on a theory of imperfect self-defense.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

---

**5.** This notion is reflected in 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.11, at 272 (1986):

> Where this "imperfect" right of self defense is recognized, it is generally the case that whenever the facts would entitle the defendant to an instruction on self defense regarding a murder charge, an instruction on this variety of manslaughter should also be given.